THOMAS J. HOLTON, PLAINTIFF IN ERROR, *v.* THE STATE.

The affidavit made before a justice of the peace, charging the commission of a criminal offence, the writ issued by the justice, and the *mittimus* directed to the sheriff, form no part of the record in a criminal case, and ought not to be inserted in it.

A copy of the charge of the court to the jury, admitting it to be a full and true copy, cannot rightfully be sent to the jury in a criminal case after their retirement. The charge of the court is part and parcel of the trial of the cause, the whole of which the Constitution requires to be public.

The sending the charge of the judge to the jury after their retirement, is tantamount to re-charging the jury at their room, in the absence of the prisoner and his counsel—and to which, if done in their presence, they would have had the right of excepting, or of moving additional instructions, and excepting to a refusal to grant them.

If a charge in such a case can be sent at all, it should be the original, and not a copy.

During the whole of the trial of a capital case, the prisoner has a right to be, and must be, present. This is a settled and well established principle of criminal law; and this principle is violated by sending the charge of the court to the jury, if such a step is taken in the absence of the prisoner.

The prisoner in a capital case must be personally present during the whole of the trial, and at every step taken in the cause. He has the right to discuss questions both of law and fact—and if, in any stage of the trial, any proceeding is had by which he has been deprived of such right, it is the denial of a right which the Constitution guaranties to him. At every stage of the proceedings, he must have an opportunity of coming into court, and being heard. If any other course is pursued, and he is convicted, it cannot be said to be " by due course of law."

Even in a civil case, no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them and they have been charged by the court, unless in open court, in presence, if practicable, of the counsel in the cause. This principle applies with greater force in a criminal, and especially in a capital case.

An indictment ought to be certain to every intent—but the abbreviation or character & for " and," is not such an obscurity or ambiguity as will render the indictment bad.

The right of the court to order the record to be amended after verdict and judgment, so as to show the words " a true bill," which words were not entered by the clerk, when the Grand Jury presented the bill of indictment, is not clear, and may well be doubted.

A court at which an indictment is found, must be held at the time prescribed by law, and by the proper judge ; and the record must show that a Grand Jury was impanneled and sworn, and it must set forth their names, and the time and place, when and where the indictment was found—and if at an adjourned term, when the original term commenced.

Where the record shows that the Grand Jury presented a bill of indictment— The State v. A. B. Felony, " a true bill"—it cannot be held to be the finding of a true bill for murder. And the fact that an indictment for murder is spread out in *extenso* on the record, does not cure the defect—for the record also shows that the grand jury did not find a true bill for murder, *but only for felony*.

Manslaughter is a felony, and where a *bill of indictment for murder* is found " a true bill," but endorsed " felony—a true bill"—*non constat*, but that the Grand Jury could not agree upon a finding for murder, and so found for felony, which might mean manslaughter, or any other felony.

If, in a capital case, the prisoner must be present at every stage of the trial, for the purpose of discussing questions both of *law* and fact, *quaere*, must he not also be present in the Supreme Court, where matters of law touching his case, are brought up to be discussed, settled and adjudicated ?

At a Circuit Court, held in and for the county of Jefferson, Middle Circuit of Florida, on the 29th day of November, 1848, the Grand Jury came into court, and presented the following bill of indictment, viz :

" The jurors of the State of Florida, in and for the body of the county of Jefferson, upon their oath present—That Thomas J. Holton, late of the county of Jefferson aforesaid, in the circuit and State aforesaid, laborer, not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, on the first day of August, in the year of our Lord one thousand eight hundred and forty-eight, with force and arms, in the county aforesaid, in and upon one John F. Stafford, in the peace of God and said State of Florida then and there being, feloniously, wilfully and of his malice aforethought, did make an assault ; and that the said Thomas J. Holton, with a certain wooden stick of no value, which he, the said Thomas J. Holton, then and there in both his hands had and held, the said John F. Stafford, in and upon the head of him, the said John F. Stafford, then and there feloniously, wilfully and of his malice aforethought did strike, and beat, and wound, giving to the said John F. Stafford, then and there with the wooden stick aforesaid, in and upon the head of him, the said John F. Stafford, one mortal wound of the length of three inches, and of the depth of one inch, of which

said mortal wound the said John F. Stafford, from the said first day of August, in the year aforesaid, until the fifth day of the same month of August, in the year aforesaid, at the county aforesaid, did languish, and languishing did live—on which said fifth day of August, in the year aforesaid, the said John F. Stafford, at the county aforesaid, of the said mortal wound died. And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Thomas J. Holton the said John F. Stafford, in manner and form aforesaid, feloniously, wilfully and of his malice aforethought, did kill and murder, against the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida."

This indictment was endorsed, "State of Florida *v.* Thomas J. Holton. Indictment for a felony. Found Nov. Term, 1848. A true bill. Allen R. McCall, Foreman."

On the first day of December, at the same term of the Court, the said Thomas J. Holton was led to the bar, arraigned and pleaded not guilty to the foregoing indictment. And thereupon came a jury, who, having heard the evidence and arguments of counsel, retired to consider of their verdict. And on the second day of December, the jury elected, tried and sworn in this cause came into court, and rendered the following verdict : " That the said Thomas J. Holton *is guilty of murder, in manner and form as in the indictment against* him is alleged," and concluded by recommending the prisoner to mercy.

Whereupon the prisoner, by his counsel, moved the Court in arrest of judgment and for a new trial, on the grounds hereinafter stated— which two motions were, by agreement, argued and considered together.

The bill of exceptions shows, that after the argument of counsel and before the jury retired, the counsel for the prisoner moved the Court to charge the jury as follows : " But if the jury believe, from the evidence, that the prisoner did not think the blow was likely to produce death, then that the jury should acquit the prisoner"—which was refused by the Court, and to that refusal the prisoner, by his counsel, excepted.

The Court gave the following charge : " If the jury believe that the deceased came to his death by a blow from defendant, stricken with a stick upon the head, and that such blow was likely to produce death, and that this blow was given not in self defence, nor in the

belief that defendant was in imminent danger of bodily harm, and without adequate provocation, the defendant is guilty of murder. If you shall be of opinion, that some new injury or violence, subsequent to the blow stricken by defendant, was made by another, so as to enlarge the wound, or create a new one, and that this caused, of itself, the death, then you will find the defendant not guilty." Defendant's counsel moved to add the words, " or accident," to this last charge, which was done.

It also appears from the record, that after the jury had retired, the judge gave instructions to the sheriff, that if the jury did not agree in one hour, to adjourn the Court until the next morning. Between 11 and 12 o'clock at night, the jury sent to the judge by a bailiff for his charge. The clerk was directed to make out a copy—which was done, and the foregoing charge, not sealed or certified, with the exception of the words, " or accident," was sent to them, without the consent of the prisoner or his counsel.

Upon the argument of the motion for a new trial and in arrest of judgment, this proceeding was shown for cause.

The counsel for the prisoner also showed in the second place— That the indictment contained abbreviations for the word "and" in divers places, against the form of the statute in such case made and provided. And a third cause shown was, that it did not appear by the record that " a true bill" had been found, the only entry on the record touching said case and the action of the Grand Jury, being the following : "The Grand Jury came into Court, and presented the following bill of indictment, to wit : " State of Florida *v.* Thomas J. Holton, felony." But the Court overruled the said motions, both for a new trial and in arrest of judgment, and proceeded to pass sentence upon the prisoner.

The record also shows, that after the motion for a new trial and in arrest of judgment was overruled, the defendant by his counsel prayed the Court to sign and seal his bill of exceptions, which was done. And it was thereupon further ordered, that the writ of error asked for in this cause, when issued, shall operate as a *supersedeas ;* and there being an omission to state that the Grand Jury presented the indictment in this case " a true bill," it was further ordered that the same be done *nunc pro tunc.*

The judge who tried this cause filed, in compliance with the statute, the following reasons for overruling the motion made in behalf of the prisoner, viz :

The principal ground is the sending to the jury the charge of the Court, in the absence of defendant's counsel. In this I see no cause of objection. It is not pretended that any addition was made to the charge, as pronounced by the Court in the presence of the prisoner, his counsel, and the jury. The charge was matter of record under the statute, and might have been delivered by the judge with the other papers to the jury on their retirement. But complaint is made of the omission of the clerk to add the word *accident* to the second instruction. I cannot perceive that this alters its character, and it is more correct, in point of law, without it. If, indeed, I were satisfied that this omission had injured or caused a prejudice to the prisoner, I would, without hesitancy, grant the new trial; but on further consideration, I am satisfied that there was no evidence in the case making it necessary or proper, or entitling the prisoner to the benefit of it. There is not a word from any witness as to any further injury after the blow by the prisoner, either from any other person, or by accident. The witness who went home with the deceased says he took his head in his lap, and was not even questioned as to further injury, and no other witness was introduced to prove such injury.— The main reliance of the counsel of the defendant was upon such a defence, and in deference to their position, and in favor of life, thinking, by possibility, I might be mistaken, this charge was given. If a new trial were had, I would not, on the testimony in the case, feel justified to give the charge to another jury. I, therefore, do not see the propriety of granting the trial because of this omission. I consider the verdict, too, of the jury as negativing the defence.

The charge of murder I consider as sufficient, without regarding the abbreviations.

Nor do I regard the objection available, as to the omission of the clerk to enter the bill returned as a true bill. By statute, the foreman is directed to endorse the bill " a true bill," which has been done in this case. This is the true evidence of its having been so found. If there is an omission by the clerk to notice it on the record, the Court, on discovering that fact, will have the record amended so as to state the truth, just as the entry, " a true bill," on which a party had been arraigned, when in fact there was not a true bill, would be corrected, to acquit him. Seeing no reason, from an attentive consideration of the facts of the case, to doubt the correctness of the finding of the jury, and not perceiving any in the objec-

tions raised, the motion for a new trial and in arrest of judgment is overruled.

The following are the errors assigned in this case, by the counsel for plaintiff in error :

1. It was fatal error to the proceedings to send the instructions of the Court to the jury—especially to send a copy, and that not a full and perfect copy.

2. The indictment is bad, because it contains abbreviations and contractions in various parts, such as & for " *and.*"

3. It did not appear of record, that the Grand Jury had ever found a true bill ; and though the court ordered the record to be altered, it could not be done.

4. The court erred in refusing the instruction asked as an amend-ment to those granted.

*Brockenbrough* for plaintiff in error :

The caption of the indictment states that it was found at "Novem-ber Term, 1848," whereas no such Term is known to our law—but the " Fall Term," which occurs in October ; and, if it was an ad-journed Term, that should have been shown.   But this and other minor objections are passed to consider the three following, assigned as errors :

1. That it did not appear by the record when judgment was given that any " true bill" had been found.

2. That the indictment contained abbreviations and contractions, such as " &" for "and," contrary to the statute—and, rejecting these abbreviations, the indictment would be vague, insensible, repugnant and without the necessary averments to constitute a good indictment for murder.

3. That after the jury retired a paper was sent to them without consent of prisoner or his counsel, during a recess of the Court, which purported to be the instructions of the Court, but which were not either the original instructions as given, or a certified copy, or a true copy, but left out an essential and important word, which might affect the whole case, and which was added by the Court, at the in-stance of prisoner's counsel.

I.—Under first head, when motion was made in arrest and judg-ment was given, the only entry *v.* Holton was this : "The Grand Jury presented the following : The State *v.* Thomas J. Holton, felony."

Our Constitution declares, " That no person shall be put to answer any criminal charge, but by presentment, *indictment,* or impeachment." Thomp. Dig., 3.

Our statutes prescribe, " That all indictments shall be signed by the prosecuting attorney, and endorsed on the back by the foreman of the Grand Jury, when so found, ' *a true bill,*' and when not found, ' not a true bill,' and signed by him." Thomp. Dig., 522.

This much is necessary to make the paper formal, of lawful form. But it is still *in fieri,* it is not yet a lawful accusation. A deed is formal, when signed and sealed in presence of two witnesses—but is yet not *a deed till delivered,* and in some instances and respects *till recorded.* And a will is formal, with three witnesses by our law, who sign in presence of testator—but it is still no will, till he is dead—and must be admitted to probate, to complete it as evidence.

So, all prescribed above may be done, and yet a party never be indicted, because the jury may change their minds at any time, till the indictment *is delivered by the foreman to the clerk in open Court, in presence of the Grand Jury.* It is that delivering which makes *the accusation*—that is the *presentment.*

No one can dispute these propositions : 1. No man can be legally convicted, till he is legally accused. 2. He can be legally accused of murder only by indictment. 3. He cannot be indicted, except by a decision of twelve Grand Jurors against him. 4. That decision can only be known to the Court, and the prisoner, and the world, by the RECORD, showing their assent to that fact in open Court, when called expressly for that purpose.

If there is any other mode of showing the assent of twelve, it is not to be found in the books. The invariable practice has been to call them, and to record their presentment—" a true bill," or " not a true bill,"—no other evidence can be shown to have ever been resorted to, but that record, in any case. In making up the rolls in England, where the case has been removed for trial in any of the various modes there practiced, if there has been any error or omission in transcribing, it is to this original record of fact, which no where else exists, to which they resort, to amend all the rest. There is no case in which they have altered this, or amended, or added to it. When the Grand Jury have given their bill and been discharged, the record then made must forever stand, because there is nothing extant *to amend or alter by.* The body which established the fact,

has vanished forever.    It can no more be altered by a court, than a constitution or law, after the adjournment of a Legislature, can be altered by the Executive—or a judgment of a court altered by a Grand Jury.    *It is the judgment of the Grand Jury*—a co-ordinate branch of the Court—to be entered by the clerk, in presence of the judge.    It is a thing which the judge cannot control, except to see that it is properly recorded at the time, in presence of the Grand Jury.    He *cannot*, even in presence of the Grand Jury, alter their decision, or add to it, or require them to alter, or add to it.    He is obliged to ask their consent, if they are content that the Court may alter matters of form, not altering matters of substance ; and *if they consent*, he may then alter matter of form *in their presence*, but not after they have retired.    All this ceremony must be very idle, if he can afterwards *enter a verdict, where he finds none.*    The record is said to be in the breast of the judge until the end of the term, and until that time, he may alter, and amend, and change—but what ?— Surely only his *own decisions and opinions*, and the accidental misprisons of his clerk.    The record of other people's decisions, opinions and verdicts, are not in the breast of the judge—they never are there. The verdicts are in the breast of the juries, till they are *recorded*, and then they are upon the record, *and no where else.*    The record of a verdict is as conclusive and irrevocable to the jury, as the end of the term to the judge.    It is more so.    There are some matters he may amend or alter afterwards, the jury never can.    If the jury who give the decision cannot alter or amend the record then made of it, how can the judge, in whose breast it never was, and consequently who can never know, except by the record, what they intended ?

The verdicts are acts independent of the Court.    They constitute a *basis*, on which the Court is then to begin to act. It is the absence of this of which we complain.    We oppose a judgment, because the *basis* is wanting—and the judgment is given, and then the *basis* created by an *amendment.*

Until the bill is brought in " a true bill" by twelve grand jurors, there is no accusation—nothing on which the Court can arraign— to which the prisoner can plead—no fact alleged to which a petit jury can say "guilty—for which the Court can adjudge death."    Until it appears on the record, no one knows that it is brought in.    *De non apparentibus et non existentibus est eadem lex.*

In this case, the Grand Jury have returned into court only one

bill—" The State *v.* Holton, felony." Must we presume it "murder," in preference to any other " felony"—must we presume it " a true bill," in preference to ' not a true bill'—or must we rely upon the frail memory of man after judgment of death, by which to amend the record?

Record evidence is necessary, else why amend the record? And yet a record from memory is no record. The amendment condemns itself. The bandage shows the wound, but cannot heal it. As the record shows on its face nothing of the finding a true bill, the presumption of innocence arises, that none was found. This presumption outweighs all human memory—nothing but a record can strangle it.

The signature of the foreman on the back of the indictment is only a form, making the " bill" an " indictment." It does not prove the concurrence of twelve, *or the return to court*, any more than does the Solicitor's signature to the body of the indictment. It proves only for *one*—we claim proof for twelve. To give this, it must be *presented in open court*, with the assent of twelve. No court would receive a bill and record it as a true bill, if only eleven grand jurors answered when called. Formerly the names of those who presented a bill had to be set out at length. The foreman may sign by mistake (as has been done) one bill for another—in anticipation, or after a hasty agreement, afterwards reversed by the jury, and he forget to erase, or to add the word " not"—by mistake of law, (in which a majority of the jury may partake,) as by deeming a majority of the Grand Jury (though less than twelve) enough to find a bill, as in Low's case. 4 Greenleaf, 439.

But if the signature was evidence of the concurrence of twelve, which is impossible, it still would not show the further fact, that the *locus penitentiæ* had passed, that the act was consummated, that the bill was *presented* in open court. It may have come in by accident, or mistake, or fraud.

The signature of the foreman *is no evidence at all of any thing, until the bill is presented in court*. It is the presentment in court, that makes the signature of the foreman of any importance, and then only as the *completion of a form*. It is *the record* which only makes the *signature* evidence of a perfect indictment—then *it* cannot make a record. Until the record shows the fact, that the bill has been returned " a true bill," the Court does not judicially know of this sig-

nature of the foreman, or in fact that there is an indictment. And if it was handed to him during the term, and he could find no record, he could not notice it. He could not ask the clerk or the by-standers, if such a bill had been brought in. He could not rely upon their memories, though they might be unanimous—not because it would not be true, but because he would not have a record. How, then, can he rely upon his own memory? And if he puts his own memory upon the record, it can be no better than that of all the rest—it cannot supply the place of that which was *indispensable.*

We thus see that the record is the *substance,* (showing that twelve agree and present before the world a solemn fact, affecting often life, and liberty, and always reputation,) and the signature of the foreman is only the *form* to complete the instrument of accusation ; and suppose the form was defective, and there was no signature on the back, though written a true bill and recorded a true bill, we could not amend even the *form* by the substance, which showed twelve had concurred and had presented in open court—how much worse is it, then, to amend the substance by the form? In the former case, too, the record would be conclusive, that the bill was found and presented by twelve ; but in the latter case, the signature proves nothing but the completion of the form.

[Here Judge Lancaster asked if the indictment is properly endorsed—and if so, *when* it was so endorsed? Brockenbrough—"It is properly endorsed. But *when* does not appear, because we have not the record of its return into open court, and the impossibility of answering by the record when a man was indicted, sustains our argument. It proves the endorsement to be nothing, until the finding is recorded. An indictment need not show *when* it was found, because the record shows *when* it was found. So decided, 2 Virginia cases, p. 3.]

To support these views, see what is inserted in making up the record. 1 Chitty's Crim. L., 719.

See the ceremonies pursued in bringing in a bill. 1 Chitty, 324. The same are found in 3 Robinson's Practice, as pursued in Virginia. The same has been the Florida practice. No book lays down any different practice any where. These ceremonies, when considered as essential, and the record conclusive, become vitally important to life, liberty and reputation, and carry out in practice the protection afforded by our Constitution and Bills of Right ; but become a mere

senseless mummery, if they may be dispensed with entirely, or the results equally recorded without the presence of the Grand Jury.

On removing the cause, or copying the record, these ceremonies become an important part of the *caption*, without which the record is not admissible in evidence. 1 Chitty, 326. They are important, because they prove the *fact*, and show that there is such a record ; and although the caption may be amended, it is because it is a copy, and the record we require must exist to amend it by. In 1 Chitty, 326, is the form of a caption, concluding " *it is presented*," and formerly it was indispensable that this should be in the present tense, but now it is not thought to be absolutely necessary. This could not have been important, except to show that the *record* was made at the time it was presented, and if it even *seemed* to have been made afterwards, it was error.

But it is said this record can be amended, and has been amended. 2 Hawkins Pl. C., 336–'7, sec. 96, 97. This admits the conclusiveness of the prior argument, and that it is indispensable to *the judgment*. This admission invalidates the judgment, unless the capacity to amend it is established. Of this, the burden is upon the State.

What is an amendment ? It must be an improvement, by change or addition of that which *exists*, but is imperfect. You cannot amend a non-entity.

We say there is no true bill presented. We examine the record, and show there is none. Can you call it amendment, to insert a true bill was presented ?

You order it *nunc pro tunc*—that is, you order it *now* for *then*, because it should have been done *then*. But it is too late to do it *now*, because it is after judgment. And before judgment, you *must* have had a record of a true bill, or you could give no valid judgment.— But you had no record—we moved in arrest, *because* there was no record—for that we moved in arrest.

You had no record of a legal accusation—you give judgment, and then make the record *now* for then. We say your judgment stands *void* by your own amendment, because it shows you have only *now*, what was indispensable *then*.

Besides, it is a thing you cannot make *now*. There was but one branch of the Court which could make it at any time, and that has dispersed. You do now what *ought* to have been done then. But it is

precisely the evidence of that fact which is wanting—*ought* it to have been done then? We know not, unless we had the record to prove there were twelve present assenting. We can listen to no man's memory. The only evidence we can have that it ought to have been done, is the *record* that it was done. Whenever you can amend, you must have something to *amend by*. Here there is nothing—there was nothing—there never will be any thing.' It was a fact which appears no where else, in no other manner—of which no other evidence exists, or was ever meant to exist, any where but the record made then. A *fact* which only existed at that moment. Before that time it was inchoate, afterwards irrevocable and unalterable. It was no one's duty to note it any where else, or preserve it, or keep a record, minute, or memorandum of it. If any one did so, it was unofficial—no record—mere memory, parol.

See 1 Chitty, 721-'2. "And no court can make any alteration, when once the judgment is solemnly entered upon the record." And strange would judgment records read, if, after sentence of death is solemnly passed, and the prisoner is remanded to the place whence he came, to depart thence only to the grave—after the prisoner is gone, if then only verdicts were to be entered for the first time upon the record. By whatever name we call it, the record still shows judgment of death without a true bill—and the insertion of a true bill afterwards, when the prisoner was gone, the Grand Jury dispersed.

It even appears that the acts of the Court must be described in the *present*, not the past tense—that the record must show that the prisoner was present, *when sentence of death was passed*. 1 Chitty, 751. And this because the statutes of amendments do not apply to criminal proceedings. This matter of the *present tense*, though frivolous it may seem, shows that the record must walk *pari passu* with the actual proceedings, and must tell of things done as they are done at the time, and not by any subsequent alterations and amendments—and if these niceties are important, what shall we say of the whole foundation of the action being brought in at the end, or the cellar and its massive walls, intended to sustain, placed on the top of the building?

At page 752, [753,] 1 Chitty, we learn that "no alteration can be made in the finding of the jury of matter of substance, whether it be the decision of the grand or the petit inquest."

" The judge may amend his own judgments, &c."—" mere ministerial acts may be amended at any time"—"any matter not of record may be amended by *the record,*" *&c.*

So 1 Chitty, 644, [645.] " But it seems *to* be the better opinion, that though a verdict cannot be amended in matter *of fact,* yet the Court may amend a mere error in form even in capital cases, when there are any minutes *or notes by which it can be amended.*" This must mean whilst the jury is present, even as to form. But surely it is a matter of *fact*—" A true bill," or " not a true bill." It is not only matter ‚of *fact,* but it is all—it is the whole verdict—it is all the jury has to say. All the rest is only the recital of the clerk of what occurs in the Court—not of any conclusion to which the jury come, or any thing which occurred in the jury room. The clerk says, " This day the Grand Jury came into court, and presented the following bills : State *v.* C. D., larceny,   State *v.* Holton, murder."

This tells nothing of what the jury think ; it merely shows they came with certain papers. If he says no more, the presumption of innocence is, that they ignored both. If he says " A true bill," then the jury speaks, and it is all *they* say. If " not a true bill," it is equally all they say. To insert either of these is to make the whole without a memorandum. If we must insert either in their absence, we must insert by legal presumption—" not a true bill." ·

But in this case the *amendment,* if made and *good* in all other respects, does not go far enough. It makes it " *felony, a true bill*"— but not " MURDER, a true bill," which is what is wanted and indispensable. The bill found might have been the highest felony. The amendment may be perfectly correct, and still *non constat* that a bill for *murder* was ever found by that Grand Jury. And this shows the danger of amendments. If the Court could amend by adding the verdict, could it not also amend by altering the description ? Might it not have erased felony, and inserted murder, from memory ? And if so suppose two bills—the one felony, for stealing, a true bill—the other felony, for murder, *not* a true bill—might not the Court alter and transpose these, by the same power of amendment ? Where is the limit ? Suppose the Judge's memory was one way, and every other person's the other, which shall prevail ? But if amendment is legal, can it be made when the prisoner is in the *condemned cell* ?—has he not a right to be heard by counsel, to introduce *evidence* upon the *new fact* to be introduced upon the record ?—has he no right to ex-

cept to the opinion of the Court ? Can he not claim to have the fact tried regularly ?—can the Court alter of its own mere motion, when the solicitor does not ask it for the State—when he says in *open court* it is *sufficient as it is*, and the Court *concurs* in this, and passes judgment, can it afterwards in private order the change ?

II.—As to abreviations in the indictment. The statute is peremptory—it shall not be in Latin, it shall be in English, and there shall not be abbreviations. It will not, therefore, answer to say " &" is a short way of way of writing the latin " *et*," because all abreviations are a short way of writing something else. And if it is Latin, it violates the other part of the statute, which requires it to be in English. See both these rules in 1 Chit. Cr. Law, 174, 175, 176.

It is no answer to say the indictment may be read without them.— Because being in violation of the statute, it is void, and cannot be read at all. But this indictment, without the " ands" written " &," would be insensible in many places, and is not sufficient in some vital parts.

Thus it not only reads, " in the Circuit State aforesaid, "in upon his head" "did strike, beat," and the like, but says he did it with a stick which he " then there *had held*"—that is, before that time, whereas he must have held it *at* the time. Besides it does not say, if we leave out the " &," that he killed Stafford or that he murdered him, but that he " did *kill murder*," which is either nonsense, or an averment that he killed a man named " murder," and certainly no averment that he killed or murdered Stafford.

III.—As to the instructions sent the jury. This requires no argument ; neither the court, nor the parties, nor any other person can send any thing to the jury, nor hold any communication except in open court. No one can speak to them out of court except the bailiff, and he only to ask them if they have agreed. Our law makes the instructions a record—they are required to be written. A copy of it is not evidence for any purpose, except made out in the regular way— a mutilated copy cannot be. The statute which requires them to be written does not authorize them to be sent to the jury, though they might be, *perhaps*, with the prisoner's consent, in open court. But to send a loose, *imperfect copy* out of court, by an order which does not appear of record, must be inadmissible. And who can tell what effect they had ? It is presumed they were thought of some important, or the law would not record them, the judge would not give them, and the jury must have thought them of some importance, or

they *would not have sent for them.* After receiving them and pondering upon them, they agreed upon a verdict, which they did not agree upon before, though they had heard the same short charges impressively and deliberately read to them more than once—who shall then say it had no effect? When that charge was delivered in court, prisoner's counsel asked the addition of a word—a word which introduced a whole chapter of possible accidents to the consideration of the mind. The prisoner and his counsel must have thought it important; the court must have thought it of some import, as at least giving a chance of life—or to say the least, that it was not unreasonable or unlawful to give it. The jury wanted the charge, it was said—no doubt truly—but the application should have been made in open court, and recorded when granted, if granted—for the bailiff may have been mistaken. But if they did want the charge, they wanted it as given—the Court must have ordered it as given. It was sent without one of its words—who shall say that the jury did not doubt about that very word ?—and that the paper sent them without it, may not have solved the doubts ?—or if it was some thing else, who knows what chain of thought that word might have awakened in the minds of the jury? The Court states that that branch of the subject was much relied upon by counsel—a branch which made impression enough on their minds to enforce with zeal, might by that *word* have raised at least a *doubt* in a juror's mind, when he was there *pondering* over the charge written in fixed unvarying form before him—when the evidence was sinking into a dream, and the argument only a confused and cloudy reminiscence.

*Hogue,* for the State :

The first error assigned in this case is, that it was not proper to send the written charge of the Court to the jury. The law requires that the charge shall be reduced to writing *and filed in the case.*— If the charge sent to the jury contains nothing more than the written charge filed in the case, it would seem *that it is not* error, because there is nothing in such a proceeding which "gives reason to suspect the purity of the verdict," and nothing which "affects the impartiality of the trial." Any irregularity committed in the course of a criminal proceeding must be, in order to vitiate the verdict, of such a character as to have the effect of destroying the purity of the verdict and the impartiality of the trial, or at least of affording ground to

suspect the one or the other.   Davis Crim. Law, 467.   See also 12 Pick, page 519.   Though the act complained of is unusual or " contrary to the ordinary forms," it is not necessarily such an irregularity as to affect the impartiality of the jury.   12 Pick., 519, 510.   See on the subject of instructions, 7 Wheeler Am. Com. Law, 122.

But it is objected, in this case, that the copy sent was not a true copy—that the words "or accident" were left out.  These words were not material and, in fact, were not necessary in the original.   The record shows that there was no evidence which would have required the Judge to insert the omitted words in the charge which he gave to the jury before their retirement.   Unless it can be supposed that the omission of these words brought the jury to a different conclusion from what they would have arrived at, had those words been in the copy, it cannot be error.   The impartiality of the trial would not be affected by the omission.   If the omission would not have such an effect or tendency, then the verdict will be supported upon the principles before laid down, as to irregularities.

The second error assigned is—that the indictment contains abbreviations.   The only abbreviation complained of is that & is written for *and*.   It would seem, upon principle and reason, that such an objection as this would not be sufficient to vitiate a verdict, upon motion for a new trial or in arrest of judgment.   At most, it is a mere formal objection, which ought to have been taken advantage of before pleading.

"An indictment," as defined by Lord Hale, " is nothing else but a plain, brief and certain narrative," &c., " in which, in favor of human life, great strictness has at all times been required, to that degree, as to become the disease and reproach of the law."   2 Hal. Hist. P. C. 193.   3 Bac. Abridg., Indictment, letter G.   " There is no rule that other words should be employed than such as are in ordinary use, or that a different sense should be put upon them than what they bear in ordinary acceptation·"—Ibidem.   Tried by this rule, it cannot be pretended that the abreviation & can be used in any other sense than *and*.   It is in such use as to be a full word of itself, and can scarcely be regarded as an abbreviation.   It is as much and as often written as the other, and no meaning can be attached to it repugnant to the sense or context of the indictment.   If, then, it is free from ambiguity, on what ground can it be objected to on motion for a new trial or in arrest ?   No case, it is believed, can be found, in which such an

13

objection was· sustained.    If the sense be clear, nice objections ought not to be regarded. 2 East., 259. The statute against abbreviations was only intended to prevent such as rendered the indictment obscure or ambiguous.    *This* cannot be argued of the abbreviation complained of here.

The third error assigned is—that it does not appear by the record that the Grand Jury had ever found a true bill.

The indictment itself has the· indorsement "a true bill," but this fact was not instantly recorded by the· clerk.    This is the objection. The formalities and solemnities required, so far as the books show, are simply these : the Grand Jury come into court and publicly present the indictment.    If it is returned a true bill, it is so indorsed and signed by the foreman.    "The indictment is then said to be *found,* and the party *stands indicted.*"    4 Black. Com., 306.· 4 Com. Dig., 645.

Now the Grand Jury is the accusing body.    Does the Court try the party upon their accusation, thus formally and solemnly presented, or· upon the record made of the fact by the clerk ?    Clearly upon the accusation· of the Grand Jury.    The only case in which I have seen it required that there should be a record of the fact, is the case of Cawood, 2 Va. Ca.    And yet the judge who pronounced the opinion in that case, mentions no other forms or solemnities requisite to the complete accusation of the party, than those above laid down.    It is true, he says the Grand Jury deliver the indictment to the clerk, "*who records the fact.*"

In the case of Cawood the record did not show that the Grand Jury had ever presented *any* indictment whatever against him.    In this respect, it differs from the case before this Court.    The record here shows that the accusing body came into Court and presented an indictment against Holton for felony ; but the record did not show the words "a true bill," though that indorsement was on the indictment itself.    In other words, the clerk failed only to record the words " a true bill."

Now, if that formality was necessary, though I can find it no where so laid down, except in Cawood's case, the next question is—could the Court direct the clerk to place those words on his record-book, in addition to the entry he had already made in the case ?    It seems to me it is, at most, an omission of the clerk which can be rectified at any time.    The record of the fact of the finding " a true bill" is not

one of those solemnities deemed necessary to constitute a complete accusation by the accusing body.

This question involves the whole doctrine of the power of courts over their records, during the term. This doctrine is briefly set forth in 3d Vol. Dane's Abridg., 510, to which I refer the Court. I remark that, in the case before the Court, it *does* appear by the record that the Grand Jury had presented a bill in open court against the prisoner. All that the Court did was to make that record say "a true bill." In Cawood's case, nothing whatever appeared on the record, yet I apprehend that in that case the court below might have ordered it to appear, so as to make the record conform to the indictment ; and such appears to have been the opinion of the General Court of Virginia, in that case.

But another question still remains. The prisoner was tried for murder ; both the indorsement and the record read "Felony—a true bill ;" is this sufficient ?

"The common law of England in relation to crimes and misdemeanors, except so far as the same relates to the modes and degrees of punishment, shall be, and the same is hereby, adopted and declared to be in full force in this State." Thomp. Digest, 489.

"Any person convicted of the crime of murder shall be punished with death." Same, 490.

"Felony comprises every species of crime which occasioned, at common law, the forfeiture of lands and goods." This most frequently happens in those crimes which are punished with death."— 4 Black. Com., 94.

In this country there is no such consequence as forfeiture of property. The only attribute remaining to distinguish a statutory felony from any other offence is the punishment of death—though it is competent to the Legislature to make any offence a felony without annexing such punishment ; but if that punishment is annexed, it is necessarily a felony.

"All statutory crimes to which capital punishment is annexed are, by reason of such punishment, felonies." 3d Robinson's Prac., 39. Now the common law declares that murder is a crime. The statute of this State also declares it. It is, therefore, a statutory offence.— The statute annexes the punishment of death. It is, therefore, a felony. If it be a felony, the indorsement of an indictment for murder with the words "*a felony*," would not vitiate the indictment.

In this case the prisoner was indicted for murder which, by the indorsement on the indictment and by the record, was styled "a felony." The body of the indictment shows for what particular crime the party was indicted. He was led to the bar and arraigned for murder, and pleaded not guilty. The only record, then, to which it is at all necessary to look, shows that the prisoner, Holton, was indicted and tried for the crime of murder; and certainly, the mere indorsement of the words "a felony," which is no part of the accusation, should not vitiate the indictment and the verdict of the jury.

On the contrary, upon reason and principle, the very reverse is to my mind perfectly clear. The indorsement of the particular kind of offence or grade of crime is made by the prosecuting attorney. The Grand Jury has nothing to do with it. All that they indorse is " a true bill," signed by the foreman. The foreman does not sign the particular offence, but affixes his signature only to the words " a true bill" or " not found," as the case may be. Suppose no crime was indorsed at all, and the Grand Jury found " a true bill," would it not be sufficient? Would not the Grand Jury, in such a case, have complied with every form and every solemnity required, in the language of the authorities, to make " the accusation complete ?"

But it is perfectly clear to my mind that the word " felony," embracing as it does the crime for which *Holton was indicted*, was a good indorsement, if, indeed, any indorsement of crime was requisite. It is a generic term, and the body of the indictment points out, declares and makes known, as the action of the Grand Jury, the species of crime of which they accuse the party in any particular case.

The action of a Grand Jury, in finding a bill of indictment and indorsing it " a felony," if, indeed, they do endorse it, merely assigns the particular crime charged to the general class to which it belongs. If this is error in law, then the Grand Jury have erred in this case, supposing they made the indorsement in question, although they have not erred in logic.

The counsel for the plaintiff in error lays down four propositions which, he says, no one will dispute : 1. That no man can be legally convicted until he is legally accused. 2. He can be legally accused of murder only by indictment. 3. He can be indicted only by a decision of twelve against him. 4. That decision can only be known by the record.

It is not necessary, nor will it be attempted, to deny these propo-

Holton *vs.* the State.—Opinion of Court.

sitions. The record in this case shows that the prisoner was legally accused. How is the decision of twelve of the Grand Jury against a party to be made known, but by the forms prescribed by law ?— The indorsement of the indictment " a true bill," signed by the foreman, is the only evidence which the law requires of the assent of twelve. " The signature of the foreman of the Grand Jury to an indictment, certifying it to be a true bill, legally imports that it was found by twelve or more grand jurors." Such was the sensible decision of the Supreme Court of Massachusetts in the case of Turns *v.* Commonwealth, 6 Metcalf, 225.

But it is said there is no record of this fact. I answer that there is. The record shows that it was amended. This, the counsel contends, is an acknowledgement of the error. Suppose it is ; the Court has power to correct any error during the term. This power is clearly settled, and cannot be denied.

But it is said the amendment cannot be made after the discharge of the accusing body. Their assent to the amendment, it is said, is absolutely necessary. Strange doctrine, this ! When the Grand Jury have come into Court and presented a bill of indictment " a true bill," and have been discharged, the indictment so found no longer belongs to them. It is placed, when found, among the files of the Court, and from the Court's own files the amendment is made and not from any papers in possession of the Grand Jury, or from the recollection of the members of the Grand Jury, or the memory of other persons.

Every form of law—every requisite in a criminal proceeding has been complied with in this case. There has been no irregularity affecting the impartiality of the trial. Not a step has been taken that does not clearly show the correctness of the proceedings, the fairness of the trial and the justice of the verdict. There is no reason, therefore, why a new trial should be awarded.

Opinion by Chief Justice DOUGLAS :

This case was brought up by writ of error from the Circuit Court of Jefferson County.

The record commences with a caption in the following words, to wit : " Pleas at the Court House in the town of Monticello, Jefferson County, in the State of Florida, on the first day of December,

in the year of our Lord one thousand eight hundred and forty-eight, before the Circuit Court of law of the county aforesaid."

And after setting out an affidavit said to have been made before a justice of the peace, the issuing of a writ by the same justice, and a mittimus to the sheriff of said county, with the following endorsement by the said sheriff, viz : By virtue of the within, I have received and committed to jail the said Thomas J. Holton"—none of which ought to have been inserted in said record, as they form no part of it—the record proceeds as follows :

" And on another day, to wit : on the twenty-ninth day of November, in the year one thousand eight hundred and forty-eight, and at the October adjourned term of the Circuit Court for Jefferson County, the following entry was made among the records of said court, to wit : " The Grand Jury came into court, and presented the following bill of indictment, to wit : The State of Florida *v.* Thomas J. Holton, felony. A true bill—together with other criminal cases.

The following is a copy of said bill of indictment, with the endorsements thereon, to wit : " State of Florida. In the Circuit Court for the Middle Circuit of the State of Florida, for Jefferson County, at November term, in the year of our Lord one thousand eight hundred and forty-eight. Jefferson County, *ss.*" Setting out the indictment, which is in the usual form, charging Thomas J. Holton with having murdered one John F. Stafford, with the following endorsement : " State of Florida *v.* Thomas J. Holton. Indictment for a felony.— Found Nov. term, 1848. A true bill, Allen R. McCall, Foreman." On the first day of December, 1848, as appears by the record, the prisoner, Thomas J. Holton, was arraigned, and pleaded not guilty to the said indictment, and the case was submitted to a jury, who, by their verdict, found the prisoner " Guilty of Murder"—upon which verdict, judgment was pronounced, and the prisoner sentenced to execution ; which sentence is succeeded by the following entry : " and thereupon the said Thomas J. Holton is remanded to jail ;" after which, the following order was made by the Court, to wit : "The State of Florida *v.* Thomas J. Holton, murder, a true bill. In this case, after the rendering of the verdict by the jury, the defendant by his counsel moved the Court for a new trial and in arrest of judgment, which motion was overruled." Whereupon, the said defendant by his counsel prayed the Court to sign and seal his bill of exceptions. " It is, therefore, ordered that the writ of error asked for in

this cause, when issued, shall act as a *supersedeas ;* and there being an omission to state that the Grand Jury presented the indictment in this case ' a true bill,' it is, therefore, ordered that the same be done ' *nunc pro tunc.*' "

It further appears, by a bill of exceptions, which constitutes a part of the record in this case, that between 11 and 12 o'clock at night, the jury had sent to the judge by their bailiff for his charge, and that the clerk had, on a message from the judge, made out the following paper as a copy of the said charge, to wit : " If the jurors believe that the deceased came to his death by a blow from defendant, stricken with a stick upon the head, and that such blow was given not in self defence, nor in the belief that defendant was in imminent danger of bodily harm, and without adequate provocation, the defendant is guilty of murder." " If the jury shall be of opinion that some new injury or violence, subsequent to the blow stricken by defendant, was made by another, so as to enlarge the wound, or create a new one, and that this caused *of itself* the death, then you will find the defendant not guilty." To the close of this last charge, the words " add accident," were attached in the hand-writing of the judge, but were omitted in the copy sent by the clerk to the jury— and said charge, omitting the said word accident, and not sealed or certified, and without consent of prisoner or his counsel, was sent to the jury.

It appears, by another portion of the record, which, by-the-bye, is very irregularly made out, that this word *accident* was, on motion of the prisoner's counsel, added in the last clause of the charge, immediately after the word " *another*," so as to make it read, " *made by another, or by accident, so as to enlarge*," &c.

It also appears that the prisoner by his counsel moved the Court to add to his first instruction the words—" But if the jury believe, from the evidence, that the prisoner did not believe at the time he inflicted the blow, that it was with a weapon likely to inflict death, then that the jury might acquit the prisoner ;" which was refused by the Court, and to that refusal, the prisoner by his counsel excepted. The foregoing contains all of the record properly applicable to the question presented in this case.

The important and delicate trust which we are called upon to exercise, in reviewing cases of the description of the one now presented for our consideration, strongly admonishes us of the caution

and prudence with which any such examination ought to be attended. Every step in the conduct of a trial of this nature imposes upon the Court very great responsibility, and requires its fullest deliberation. All the light which can be derived from authority, or from argument and discussion, is deserving of the most serious attention.— With these views of the character of the duties devolved upon us in this case, we approach the errors assigned; and the *first* is, that " it was a fatal error to the proceedings to send the instructions of the Court to the jury—especially to send a copy, and that *not a full and perfect copy*."

This assignment is based upon the fact stated in the record, "that between twelve and one o'clock at night, the jury had sent to the judge by their bailiff for his charge, and that the clerk had, on a message from the judge, made out a paper containing the following, which he sent to the jury, viz : " If the jury shall be of opinion that some new injury or violence, subsequent to the blow stricken by the defendant, was made by another, so as to enlarge the wound, or cause a new one, and that this caused of itself the death, then you will find the defendant not guilty."

It further appears, that when this charge was given to the jury, counsel for the prisoner moved the Court to add the word *accident*, so as to make the charge read, " made by another, or *by accident*," &c., which was done ; and that the judge added the words (by an asterisk) in his own hand-writing, at the foot of the written charge ; but that the clerk, in the paper that he made and sent to the jury, left these words out.

The first question presented for our consideration, upon this statement of facts, is, whether this paper, admitting it to have been a full and true copy, could rightfully have been sent (as this was sent) to the jury ? And after the most mature deliberation, and the most full consideration of the question, we are of opinion that it could not.— The Constitution of this State, chap. 1, sec. 2, No. 10 Thompson's Digest, page 2, amongst other things, provides, "That in all criminal prosecutions, by indictment or presentment, the accused shall have a speedy *public trial*, by an impartial jury of the county or district where the offence was committed ;" and No. 15, page 3, " No person shall be put to answer any criminal charge, but by presentment, indictment, or impeachment." The charge of the court to the jury is the evidence to them of the law which they should apply to the

facts, and is part and parcel of the trial of the cause, the whole of which should be *public.* The statute approved January 4, 1848, sec. 8, Pamph. Laws, p. 10, requires, " That charges made by judges to juries in criminal cases shall be reduced to writing, and filed in the case ;" and because this is so, it has been urged by the Attorney General, that " If the charge sent to the jury contains nothing more than the written charge filed in the case, it would seem that it is not error, because there is nothing in such a proceeding which gives reason to suspect the purity of the verdict, and nothing which affects the impartiality of the trial ;" and Davis' Cr. L., 467, and 12 Pick. Rep., 510, 519, were cited to sustain this proposition.    In the case in 12 Pick., the constable who attended the jury furnished them some refreshments, without an order of the Court, but they were such as the Court deemed reasonable, and without deciding whether the facts disclosed an irregularity or not, it refused to grant a new trial for that cause.  Davis says : " The present inclination of the courts appears to be, rather to relax than to increase the strictness of the law on this subject, in so far as the object to be attained, which is the guard. ing against the exercise of any improper influence over the jury, will allow ; and, therefore, where there is nothing in the transaction which gives reason to suspect the purity of the verdict, to sustain it, notwithstanding any *trivial* irregularity, not affecting the impartiality of the trial."  In the case of Guykowski *v.* The people, 1 Scamm., 479, also cited by the Attorney General, the Court held the follow. ing language : " Where there is every reason to believe, from an in- spection of the proceedings, that the intrinsic merits of the case have been fairly ascertained and determined, the adjudication of the infe- rior tribunal should not be disturbed, unless it satisfactorily appear that some settled and well established principle of criminal law, or rule of proceeding, has been clearly violated."    While the justice of the rule here asserted is admitted, and an adherence to its principles conceded, it is of equal importance that the rights of the accused should be protected and preserved, and the essential forms of law prescribed for the mode of conducting the ascertainment of his guilt, should be carefully observed and followed.  A departure from them could not fail to produce difficulties and doubts.    A recognition of a departure in one case, might lead to the adoption of another ; and, finally, those barriers, which are guarantees for the regular and im. partial conducting of criminal cases, might be frittered away, and

14

possibly eventuate in gross injustice.   It is much easier to require the observance of the mandates of the law, than to determine in what cases they may be safely dispensed with.   It is, therefore, more proper and more consonant to reason and justice to require a substantial adherence, than to suffer innovations upon the known and positive rules prescribed by law for the regular conducting of causes. The justice of these grounds is as clear and apparent, as those which are founded on principles of humanity, by which the administration of criminal law has been marked, and which declare that the accused stands on all his rights, and waives nothing which is irregular, and more especially so, where life is in the question." Testing this case by these principles, we enquire whether a positive rule, prescribed by the Constitution, which is the paramount law of the State, would not be violated, by thus sending the charge to the jury? It would be nothing less or more than re-charging the jury at their room, in the absence of the prisoner and his counsel, as had been once publicly done in their presence, in open court.   We are not prepared to say, what effect this might have upon the jury in determining their verdict ; but certain it is, that if the charge, instead of being sent to the jury, had been re-read to them by the judge in open court, in presence of the prisoner and his counsel, they would have had the right (and might have exercised it) of moving for additional instructions, and if their motion was overruled, of excepting to the opinion of the Court, or of excepting as to those already given, if they had not done so before ; upon which exceptions, the prisoner might have based a writ of error.   Of the benefit of all this a prisoner might be, and of all but the last he actually was, deprived in this case, by the course that was adopted.   But if a doubt could be entertained upon this point, we think there can be none whatever that if a charge, in such a case and under such circumstances, may be sent by the judge to the jury, it should be the original one, and not a copy.

But there was another very important, settled and well established principle of criminal law violated, we think, by this proceeding ; which is, that during the trial of a capital case, (the whole trial,) the prisoner has a right to be, and must be, present—no step can be taken by the court in the trial of the cause in his absence.   This results from the humanity of the law, and the tender regard it has for human life ; which forbids that any proceedings shall take place

in the trial of such a cause, unless the prisoner charged is present in court, to make his objections to any and every step that may be taken in it, which he may deem illegal, and to do whatever else he may or can legally and properly do in his own defence. Suppose that after the testimony has been taken the prisoner escapes, or becomes sick, and is unable to be brought into court, can the jury render a verdict? Suppose he escapes or is taken sick, and is thus disabled, after the verdict has been received, can judgment be rendered? If he were to escape or become sick, and unable to remain in court while the testimony is being taken, or the charge is being given, would the cause proceed?

In the case of the State v. Hughes, 2 Alabama Reps., 103, 104, Collier, Ch. Justice, delivering the opinion of the Court, said: "The 10th sec. of the 1st art. of the Constitution declares, that "In all criminal prosecutions, the accused has a right to be heard by himself and counsel," &c.; again—" and in all prosecutions, by indictment or information, a speedy public trial by an impartial jury of the county or district in which the offence shall have been committed— he shall not be compelled to give evidence against himself, nor shall he be deprived of life, liberty, or property, but by due course of law." This constitutional provision guarantees to the accused the right, not only to discuss questions of law and fact, which may arise preparatory to or pending the trial before the jury, or other proceedings in the cause. That he may avail himself of this privilege, the opportunity must be afforded him of coming into Court and being heard, before he is foreclosed of any legal exception. If a different course is pursued, and a sentence pronounced against him, extending to life, liberty, or property, he cannot be said to have been "convicted by due course of law." Our constitution, sec. 2, No. 8, is essentially the same in principle, as that of Alabama above cited.

In Sperry's case, 7 Leigh Reps., 623, (2 supp. to the United States Digest, page 154, No. 242,) the record showed that on the 29th of September, 1837, the accused was led to the bar, in custody of the keeper of the jail, and was then arraigned and pleaded, and on motion of the prisoner, the cause was continued until the first day of the next term, and thereupon he was remanded to the jail. Afterwards, at a court held the 27th day of April, 1838, it was entered upon the record, that on that day "came, as well the attorney for the commonwealth, as the prisoner *by his attorney*, and thereupon

came a jury," &c. The jury, not agreeing upon their verdict on that day, were adjourned over until the next. Nothing being stated on the record, from which it could necessarily be inferred that the prisoner was personally present on the 27th April, the General Court decided that the verdict, which was found on the following day, should be set aside, and a *venire de novo awarded.* In the case of the Commonwealth *v.* Parker, 2 Pickering, 550, which was an indictment for murder, after the jury had been impannelled, and the circumstances of the case stated to them, the counsel for the prisoner moved that the jury should view the place where the assault was alleged to have been made. Parker, Ch. Justice, asked the counsel if they knew of an instance of a view being granted in a case like this, saying that it seemed to violate the principle, that the proceedings should be in the presence of the accused. 3d Robinson's Practice, 178. 1 Chitty's Crim. Law, 636, and 4 Black. Comm., 317, and the State *v.* Battle, 7 Alabama Reps., 259, are also authorities which tend to sustain this view of the matter. In the case last cited the Court held, that, when a prisoner will not appear in court to hear the verdict which the jury announce themselves ready to render, the Court may order a mistrial. This was a charge of an assault with an intent to kill, and the prisoner had fled when the jury came in—and if the Court would not proceed in such a case in the absence of the prisoner, surely it should not in a capital case.

In Sergeant *v.* Roberts, *et al.*, 1 Pick. Reps., 338, cited by the counsel for the prisoner, there was a motion for a new trial, and one of the grounds on which it rested, was a written communication from the judge to the jury, after the Court was adjourned, in answer to a note from their foreman, stating the improbability of their agreeing upon a verdict. In regard to this, Parker, Ch. Justice, who delivered the opinion of the Court, said : " As it is impossible, we think, to complain of the substance of the communication, the only question is, whether any communication at all is proper ; and if it was not, the party against whom the verdict was, is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and where practicable, in presence of the counsel in the cause." This is a civil case, and the principle asserted in it applies with far greater force in a criminal,

and especially in a capital case. It is true, that in Shepley *v.* White, 6 New Hamp. Reps., 172, which was somewhat similar in principle, a new trial was refused. The judge who delivered the opinion in the case, after commenting upon the cases of Thayer *v.* Van Vleet, 5 John. Reps., 111, and Brown *v.* Crane, 10 Johnson, 239, concludes as follows : " The principle to be deduced from these cases seems to be a sound one. If the jury, after an adjournment, put a question respecting the facts of the case to the Court, it will be irregular to state the evidence relating to it; but if they desire instruction upon a mere question of law, that may be answered. It should undoubtedly be answered in such a way that the parties may have an opportunity to have it corrected, if there is error in the answer ; and in this way, all the rights of both parties are secured as effectually as if the answer was given in open court." This also was a civil case, and we doubt exceedingly whether the learned court who decided it, would have sustained such a proceeding in a capital case. The last paragraph of its opinion shows very clearly that it ought not to be applied in such a case, because if the verdict is for the prisoner, it is conclusive ; and the error (if such error produced it) could not be corrected ; and it is the duty of the Court to hold the scales of justice even between the prisoner and the State.

The second error assigned is that " The indictment is bad, because it contains abbreviations and contractions in various parts, such as the "&" for "and." & is not a letter, but a character which represents the word *and*, and nothing else—it would be better to use the word itself. This character, however, although it may have been discarded by some classical writers and others who are very nice and particular in regard to their style of writing, has generally obtained, been long in common use, is as well understood as the word "and" itself, and is not therefore obscure, ambiguous, or likely to deceive or mislead ; and it is only such as are ambiguous or obscure that render an indictment bad. An indictment ought to be certain to every intent and without any intendment to the contrary. 1 Chitty's Cr. L., 306. Cro. Eliz., 490. Cro. Jac., 20. But this strictness does not so far prevail as to render an indictment invalid in consequence of the omission of a letter which does not change the word into another of different signification, as *undertood* for *understood*, and *receiv'd* for *received*. 1 Leach Cr. Ca., 134, 145. And if the sense be clear, nice objections ought not to be regarded. 1 Chitty's

Cr. L., 172.    2 East., 259, 260.    We therefore think that this objection is not sustained.

The third error assigned is that " There did not appear of record that the Grand Jury had ever found " *a true bill*," and though the Court has ordered the record to be altered, it could not be done."

The record, as we have seen, commences as follows, to wit :— "Pleas at the Court House in the town of Monticello, Jefferson County, in the State of Florida, on the first Monday of December, in the year one thousand eight hundred and forty-eight, before the Circuit Court of law for the County aforesaid," saying nothing of its being an adjourned term.    And the next entry, (after setting out an affidavit, warrant and commitment, &c., which are no part of the record,) is as follows : "And at another day, to wit, on the 29th day of November, in the year one thousand eight hundred and forty-eight, at the *October adjourned term* of the Circuit Court of Jefferson County, the following entry was made among the records of the Court, to wit :  The Grand Jury came into Court and presented the following bill of indictment, to wit : The State of Florida *v.* Thomas J. Holton, Felony, a true bill."    This is all that the record contains respecting the finding of the Grand Jury in this case ; and by another part of it we are informed that the words "a true bill" were not in the record until after the verdict was found and judgment rendered thereon, when the Court ordered that it be inserted " *nunc pro tunc ;*" and the right of the Court to make this order, at that stage of the proceedings, is denied by the counsel for the prisoner, and may well be doubted.    But from the view that we have taken of this case, we do not deem it necessary now to decide that question, as we have come to the conclusion, after a due examination of the record and the most mature deliberation, that there is no proper showing by the record that any bill of indictment for murder was ever found by a Grand Jury against the prisoner, and that the first error assigned is well sustained.    The clerk has, after the entry of the finding above mentioned, spread *in extenso* upon the record a paper purporting to be an indictment against the prisoner for murder, which, he says, is a copy of the said bill of indictment, with the endorsements thereon ; and, at the foot of it, he says " Endorsed, State of Florida *v.* Thomas J. Holton, Felony, found at November term, 1848."    Now an indictment found at November term, 1848, is not an indictment found (as stated in a former part of the record,) at the *October adjourned term,*

1848. The clerk states further that this indictment was endorsed "Allen R. McCall, Foreman," but there is nothing in the record to show that Allen R. McCall was foreman of a Grand Jury at either the October adjourned term, 1848, or at the November term, 1848, if any such term was holden. There was not, however, any statute authorizing such a term to be held, and it is presumed that none such was holden ; and if the bill was in fact found a true bill at the *October adjourned term*, the record should have shown when the original session commenced, but it does not. Chitty, 1 Cr. L., 331, says : " If an indictment is taken at an adjourned session, it must be shown when the original sessions commenced, as well as when the bill was preferred, in order to show that it is within the time prescribed by the statute." And see The King *v.* Fisher, 2 Strange, 865 ; 3 Bac. Abr., title Indictment, page 94, letter K. The caption of an indictment is a formal statement of the proceedings, describing the court before whom the indictment was found, the time and place where it was found and *the jurors by whom it was found,* and these particulars it must set forth with sufficient certainty. 1 Chitty's Cr. L., 326.— 5 Bac. Abr., title Indictment, 93. This record does not show the name of the judge who held the Court, unless we can infer it from finding the name of a judge signed to a bill of exceptions, after the trial was over ; nor does it set forth the names of the Grand Jurors who found the alleged indictment, or even show that one was empanelled at either of the terms of the Court mentioned. It is possible that these two last mentioned defects might have been amended, if the proper steps had been taken in time, but that would have availed nothing ; for, if we could presume that the Court was holden at the time prescribed by law, and by the proper judge, and that a Grand Jury was duly empannelled and sworn, and that Allen R. McCall was foreman of it, when the record states that the Grand Jury found " a true bill" against Thomas J. Holton for *felony,* we think that we are not warranted in saying that they agreed upon finding and did find a " true bill for murder." The fact that a paper called an indictment for *murder* is spread out *in extenso* on the record does not cure the defect, which is, that, by the record it also appears that the Grand Jury *did not find a true bill for murder,* but only for *felony.*— It has been suggested that the word "felony" might be rejected as surplusage ; but it would read that the Grand Jury came into Court and presented an indictment against Thomas J. Holton " a

true bill" without showing for what; which would not help the matter. Felony is a generic term, which includes all capital crimes.— 4 Blackstone's Comm., 63. Davis' Cr. L., 62. In Cawood's case, 2 Virg. Cases, 541, the record showed that the Grand Jury were regularly empannelled and sworn, that they found many bills of indictment and made several presentments, and then, *having nothing further* to present, were discharged. In the record of the proceedings of the Grand Jury there was no entry of any bill being found against the prisoner; the paper, however, which was copied into the record as the indictment, had on it the endorsement " a true bill," and this endorsement was signed by the person who was foreman of the Grand Jury at the term at which the prisoner was arraigned. It was stated in the proceedings had upon the trial, the prisoner "who stands indicted for murder, was led to the bar and thereof arraigned, and pleaded not guilty to the indictment." Held, that the prisoner did not appear by the record to have been indicted; that the failure to record the finding of the Grand Jury could not be supplied by recording the paper purporting to be an indictment, nor the endorsement thereon, and that the subsequent plea of " not guilty," pleaded by the prisoner, did not cure the defect of the record. The Grand Jury cannot find one part of the same charge to be true and another false; they must either maintain or reject the whole, and therefore if they endorse a bill of indictment for murder " *billa vera se defendendo*," or " *billa vera*," for manslaughter and not for murder, the whole will be invalid and may be quashed on motion. 1 Chitty's Cr. L., 322 and authorities there cited in note (e). 2 Hale 162.— So we think of a finding for *felony* on a bill of indictment for *murder*. Felony comprises every species of crime which occasioned, at common law, the forfeiture of lands and goods. This most frequently happens in those crimes which are punished with death. 4 Black. Comm., page 94.

The second section of the act relating to crimes and misdemeanors, (Duval's Comp., 113,) declares that any person convicted of murder, rape or arson shall be punished with death. Here, then, there are three felonies enumerated in the very section which provides for the punishment of murder. Manslaughter, too, is a felony at common law and is so regarded throughout this State. In all trials for that offence the prisoner has always been allowed his twenty peremptory challenges, under the 14th section of the act of Novem-

Holton *vs.* the State.—Opinion of Court.

ber 19th, 1828, for the apprehension of criminals, &c., which says : " In all cases of felony the accused shall have a right of peremptory challenge of twenty." Upon an indictment for murder the jury may acquit of the malice aforethought and murder, and find guilty of manslaughter. 1 Chitty's Cr. L., 638, and authorities there cited in note. *Non constat* but the Grand Jury could not agree upon a finding for murder and so found for *felony* in this case.

The fourth and only remaining error assigned is that " The Court erred in refusing instructions asked as an amendment to those granted."

The instruction asked and refused was as follows : " But if the jury believe from the evidence that the prisoner did not think the blow was likely to produce death, then that the jury should acquit the prisoner ;" and we think that the Court did right in refusing it.— Had it clearly appeared that he so thought, or had a right so to think from the size of the stick used, still he would not have been entitled to an acquittal—it would only have reduced the offence to manslaughter. This assignment, therefore, is overruled. But, for the reasons above stated, upon the *first* and *third* errors assigned, we are of opinion that the judgment of the Circuit Court of Jefferson County should be reversed, a *supersedeas* to the sentence of death awarded, that the indictment be quashed and that the prisoner be held to answer to a new bill of indictment to be preferred against him, and that the cause be remanded for further proceedings in accordance with this opinion.

*Per curiam.**

---

* NOTE.—The Reporter understands that Justice HAWKINS did not assent to all the views taken by the Court in the foregoing opinion. No expression of dissent was heard from him, however, and it is believed he concurred in the judgment pronounced by the Court.