**OUTLAW v. UNITED STATES.**
**No. 7741.**

Circuit Court of Appeals, Fifth Circuit.
Feb. 10, 1936.

W. P. McLean and Jack Binion, both of Fort Worth, Tex., and W. C. Wofford, of Taylor, Tex., for appellant.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Joe H. Jones, Asst. U. S. Atty., of Dallas, Tex.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, convicted along with one Loe of a conspiracy under 18 U.S.C.A. § 88, presents by his appeal four questions: Whether the indictment is good; Whether the evidence against him was sufficient to go to the jury; Whether evidence of good character presented by Loe was to be considered otherwise than as to Loe's guilt; and whether reversible error results from the sending by the judge of his charge to the jury at their request after the stenographer had reduced it to writing.

The indictment in the first count charged a conspiracy between appellant and Loe to commit an offense against the United States by violating sections 232 and 241 of title 18 of the Code, that is to say, by agreeing together corruptly to influence and impede the administration of justice in a named case in a named federal court wherein the grand jury were investigating the killing of a revenue officer by one Cato, by hindering the grand jury in ascertaining the true facts, and by presenting a false state of facts relative thereto; and that during and in pursuance of the conspiracy, and to effect its object, appellant had suggested to Loe stated false testimony tending to show that Cato acted in self-defense, had promised to pay Loe $500 to swear to it, that Loe had agreed to do so, that certain other things were done preliminary to entering the grand jury room, and that Loe, being sworn therein, falsely testified that he saw the killing. The second count was much the same, except that the conspiracy was charged to be one to defraud the United States; no mention being made of sections 232 and 241. As to the first count, the mention of two criminal laws whose violation was included in the conspiracy works no duplicity in the count. If there be but one conspiracy, it makes no difference how many criminal acts it contemplates. Nor is the count invalidated by the contention that, since section 232 makes penal a subornation of perjury, the inducing by one person of another to swear falsely could not be a conspiracy to violate that section, but ought to be charged as perjury in the one and subornation in the other. Too much weight ought not to be laid on the mention of a statute or statutes which the pleader supposes to be involved when a detail of the facts follows, because it is the facts which determine what, if any, statute is violated. See United States v. Hunter (C.C.A.) 80 F.(2d) 968, and cases cited, especially Harper v. United States (C.C. A.) 27 F.(2d) 77, involving a charge of conspiracy.

The facts stated in the present indictment show a conspiracy to impede and obstruct justice by perjury, and that is a criminal conspiracy whether the perjury be consummated or not. Williamson v. United States, 207 U.S. 425, 426, 28 S.Ct. 163, 52 L.Ed. 278. The Williamson Case also settles that details of the means to be used

and the precise false testimony to be given need not be alleged. The appellant was by the indictment sufficiently apprised of what he was to be tried for, and he would be sufficiently protected by the record from a second jeopardy. The second count charging that the United States were to be defrauded is also good. The defrauding meant by the statute is not only pecuniary loss, but also any defeat of a lawful governmental function. Haas v. Henkel, 216 U.S. 462, 463, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112. The United States were here to be defrauded of doing justice. Both counts of the indictment are good. The imprisonment of fifteen months and the fine of $2,500 imposed are within the maximum, and would be supported by either count.

■■ As to the second question, the evidence of the codefendant Loe fully proves the indictment. There was corroboration to the extent of additional proof that appellant was engaged as counsel by Cato immediately after the killing, and at once began great activity in interviewing witnesses; that he did seek out Loe and take him away in an automobile at the time and place Loe testifies the corrupt agreement was made; that appellant was seen talking to Loe near the grand jury room; and there is other evidence that Loe was not at the scene of the killing, but elsewhere, and could not have been an eyewitness of it. He at first testified before the grand jury as he agreed to do, and then was recalled, and, when pressed touching an agreement to perjure himself, he recanted. The recantation, however, was admitted to the jury only as evidence against Loe. The main argument that the evidence is insufficient is that, in order to support a charge either of perjury or subornation of perjury, there must be more than the oath of one witness, especially when he is an accomplice. Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118. It may be doubted whether this rule has any application to a charge of conspiracy to impede justice by perjury, for it may be that the perjury was never consummated. There would then be lacking the element upon which the rule largely rests that the controverted fact has been finally and absolutely sworn to, and that more than a simple contrary oath is necessary to show its falsity. In this case it may be that, by his recantation before the grand jury acted, Loe saved himself from the guilt of absolute perjury. Be that as it may, there is corroboration here that the assertion that he saw the killing, on which hangs his other testimony about it, was false, for one other witness puts him where he could not have seen it. Lack of corroboration can be claimed only on the one point that appellant conspired with Loe and induced him so to testify. That raises only the usual question of the credibility of an accomplice, on which the law of the United States courts is that the jury should be cautioned by the judge and should weigh such testimony with care, paying much attention to the circumstances, but, if convinced beyond a reasonable doubt of its truth, may rest a verdict upon it. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Valdez v. United States, 244 U.S. 432, 37 S.Ct. 725, 61 L.Ed. 1242; Crawford v. United States, 212 U.S. 183, 184, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392.

■ Loe produced three witnesses who testified that for many years he had borne a good general reputation in the community as a law-abiding citizen, and for truth and veracity. The evidence was first admitted only as touching Loe's guilt or innocence, but later the court told the jury: "Mr. Loe has testified before you; if you find that his general reputation will assist you in passing upon the truth or untruth of his testimony, then you have the right to so use this testimony." Though Loe was on trial, he was used by his consent as a government witness. Several previous contradictory statements were proven against him by witnesses for appellant. Loe's character also stood much damaged by the criminal conduct which he was admitting. His credibility was very much in issue. Could it be supported by proof of a previous good reputation for veracity? His previous character as a law-abiding man he could of course use in his own defense as tending to mitigation of his guilt. His character for veracity would have no relevancy except as tending to support him as a witness against appellant. Mere contradiction of him by appellant's testimony admittedly did not give occasion to introduce proof of good character. Whether impeachment of him by proof of contradictory statements constitutes such an attack on his character as opens the door to such support has been much debated. Some courts hold that evidence of good character is thus rendered admissible, others that it is inadmissible,

and some that its admission rests in the discretion of the trial court. See the collection of cases under 70 C.J., Witnesses, § 1334.

In a civil case from Mississippi this court held it inadmissible. Buckeye Cotton Oil Co. v. Ragland (C.C.A.) 11 F.(2d) 231. That case resulted in affirmance, and might rest on the view that the admission or rejection of the evidence is discretionary. This seems to the writer the true rule, for sometimes the contradictory statement appears to raise only a question of memory or mistake, while under other circumstances it seems to indicate a want of trustworthiness. In the latter case only is the character for veracity directly brought in question. In Texas, where this trial occurred, it is consistently held that such supporting evidence is admissible. Burrell v. State, 18 Tex. 713; Hardiway v. State, 108 Tex.Cr.R. 659, 2 S.W.(2d) 455; Williams v. State, 111 Tex.Cr.R. 511, 14 S.W. (2d) 274; Turner v. State, 112 Tex.Cr. R. 245, 16 S.W.(2d) 127. So, where the witness is discredited by proof of a crime committed by him, such support is held allowable. Turner v. State, supra; Central R. R. & Banking Co. v. Dodd, 83 Ga. 507, 10 S.E. 206; Mutual Life Ins. Co. v. Treadwell (C.C.A.) 79 F.(2d) 487. Loe is a criminal by his own confession. Taking the whole situation together, we hold there was no error in permitting the jury to consider the evidence touching his character in determining his credibility.

We have most concern in ruling upon the last question, whether there should be a reversal because of the written charge sent to the jury. The charge was delivered orally and taken down by the stenographer. The jury, after prolonged consideration of the case, made known to the judge, presumably through the bailiff, that they desired a copy of the charge given them. The judge had the stenographer to write it out, checked it, and sent it to the jury room. Appellant and his counsel were present in court, but did not know of these communications until the verdict had been returned and the jury discharged. The copy of the charge, signed by the judge and filed with the clerk on the same day the verdict was, is in the record. No exception was taken to the oral charge. No contention is now made that the written one differs from it or is in anything exceptionable. The bald contention is that the judge should have held no communication with the jury except in open court with the knowledge of the accused and his counsel. By the statutes of Texas both in civil and in felony cases the judge is required to write out his charge before the argument begins, submit it to counsel that they may present objections in writing and request additional charges, and the charge as finally read to the jury is to be certified and filed with the papers. It is specially provided that the jury may take the charge to the jury room. Rev.Stats. of 1925, arts. 2184 to 2193, inclusive (as amended [Vernon's Ann.Civ.St.Tex. arts. 2184–2193]); Code of Criminal Procedure, arts. 658, 660, 665 (as amended [Vernon's Ann.C.C.P.Tex. arts. 658, 660, 665]). These statutes of course do not govern the trial of a criminal case in the federal courts, but they seem to have been partly observed in this trial, and there is now no emphasis laid by appellant on the fact that a written charge was in the hands of the jury, but the complaint is of the way it got there. We hold with the contention of appellant that the jury should have been recalled from the jury room and recharged by reading the former charge in the presence of appellant and his counsel who had remained in court and had not by a voluntary departure waived any right. It is a misconduct for the judge to hold any important communication with the jury regarding the case unless openly and with opportunity to the accused to be present and to object. Private communications, however harmless in themselves, may open the way to abuses and may destroy the confidence of the accused and of the public in the fairness of the trial. By the great weight of authority they constitute error, especially in a criminal trial. Sargent v. Rogers, 1 Pick. (Mass.) 337, 11 Am.Dec. 185; Dodge v. United States (C.C.A.) 258 F. 300; Sandusky Cement Co. v. A. R. Hamilton & Co. (C.C.A.) 287 F. 609; Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853; Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787.

Formerly there was a presumption of prejudice, and the error was reversible. We are of opinion that since the passage of the Act of Feb. 26, 1919, 40 Stat. 1181, 28 U.S.C.A. § 391, it may sometimes be otherwise. The act declares: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard

to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." There has been no authoritative determination of what is meant by "technical errors" and "substantial rights." In Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185, the majority opinion seems to hold that a free verdict was not a substantial right if guilt was apparent from undisputed facts. In a criminal case a fair jury, full evidence, and a correct charge as to the law are certainly substantial rights. Many constitutional safeguards intended to secure full and fair trial before free juries, though procedural only, are substantial rights which ought not to be frittered away. Though they may generally be waived, the quoted statute cannot abolish them. The right to be present at all stages of a trial for felony is in this category. But there is a line separating this right from mere procedure, and errors of procedure which do not affect the result of the trial are certainly among the "technical errors" which Congress may require, and has required, to be disregarded. While a private communication between judge and jury is usually irregular and erroneous, it may not in all cases prevent a constitutional or a legal trial. Many misconducts of jurors do not so result, but may be purged by showing that no prejudice could have resulted.[1] If the judge in this case had delivered any objectionable or even any new instruction to the jury, we would be prepared to hold that denial of the opportunity to hear it and to take exception to it ought to work a new trial. Because it clearly appears that the jury got only exactly what had already been given them without objection and in a form usual in Texas and not now complained of, we think that no substantial right was infringed, and the error in procedure may be regarded as a technical one. If the jury had been recalled and the charge read to them in appellant's presence, no different result can be supposed. In so holding we follow the cases of Dodge v. United States, and Sandusky Cement Co. v. A. R. Hamilton & Co., supra. It does

not appear what the communication was between judge and jury in Fina v. United States (C.C.A.) 46 F.(2d) 643, but we do not agree that every communication in the constrained absence of the accused necessarily requires a new trial. The trial under review in Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 77, 39 S.Ct. 435, 63 L.Ed. 853, occurred before the passage of the statute under discussion and in the opinion no reference is made to it. The communication involved there was a new charge, and, moreover, an incorrect one, amply distinguishing that case from this. Shields v. United States, supra, was not argued for the appellee. The Circuit Court of Appeals [17 F.(2d) 66] was there held in error in supposing there was any waiver by the accused. The communication verged on a coercion of the jury, and its secrecy prevented the accused from consenting to a mistrial, as he might have done if present. There was no mention of the statute.

Finding no reversible error, we affirm the judgment.

---

[1] In Valdez v. United States, 244 U.S. 432, 37 S.Ct. 725, 61 L.Ed. 1242, decided before the Act of Feb. 26, 1919, the right of the accused to be present when the scene of a murder was viewed was held waivable, and, if not waived, no reversal should follow when no prejudice resulted. See, also, Diaz v. United States, 223 U.S. 442, 443, 32 S.Ct. 250,

56 L.Ed. 500, Ann.Cas.1913C, 1138. Many cases from the state courts are collected in notes to State of North Dakota v. Murphy, 17 L.R.A.(N.S.) 609, and 16 Ann.Cas. 1133, touching secret communications between judge and jury, some holding them to be ipso facto reversible error and others not reversible if no prejudice appears.