El Pueblo de Puerto Rico, demandante y apelado, *v.* Eusebio Saldaña, acusado y apelante.

Núm. 11097.—*Sometido:* Marzo 5, 1946.  *Resuelto:* Mayo 27, 1946.

*Benicio Sánchez Castaño*, abogado del apelante;  *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernández*, Primer Procurador General Auxiliar, y *J. Correa Suárez*, Fiscal Auxiliar del Tribunal Supremo, abogados de El Pueblo, apelado.

El Juez Asociado Señor Córdova emitió la opinión del tribunal.

Apela Eusebio Saldaña de una sentencia de siete años de presidio por un delito de homicidio voluntario.

La prueba de cargo demostró que Saldaña, hombre débil, enfermo y viejo, destrozó el cráneo de Alejandro Delgado con varios golpes propinados con un pedazo de bambú. La de descargo explica que Delgado, hombre joven, corpulento y de carácter violento e irrespetuoso, quien ya desde algún tiempo venía demostrando indebido interés en la joven esposa de Saldaña, hasta el punto de que Saldaña se quejó de ello ante el Juez de Paz y la policía, pretendió raptar la esposa de Saldaña en presencia de éste, llevándosela violentamente de la casa, interviniendo entonces Saldaña con los golpes que segaron la vida de Delgado.

Algún tiempo después de estar deliberando el jurado que entendía en el caso, avisó el jurado al juez, por conducto del alguacil, que deseaba regresar a sala porque no podía ponerse de acuerdo. Estaba presente el abogado defensor, quien pidió al juez accediera a los deseos del jurado, pero el juez se limitó a instruir al alguacil informara al jurado que continuara deliberando. Media hora más tarde rindió el jurado veredicto declarando al acusado culpable de homicidio voluntario, y recomendó "la mayor clemencia para el acusado en vista de las circunstancias de este caso." El abogado defensor pidió entonces se dejara sin efecto el veredicto, por razón de lo ocurrido al anunciar el jurado que no podía ponerse de acuerdo, sosteniendo que eso trajo por resultado un veredicto por transacción. La corte declaró sin lugar la moción. A solicitud del abogado defensor se procedió entonces a examinar a cada uno de los miembros del jurado en cuanto a si el veredicto era el suyo contestando todos que sí, y añadiendo tres de ellos "con clemencia".

El apelante señala como error la actuación de la corte al negarse a oír al jurado en corte abierta en cuanto a su desacuerdo y al comunicarse con el jurado por conducto del alguacil y sin estar en corte abierta.

La corte erró, a nuestro juicio, al no acceder al deseo del jurado de regresar a sala, y al ordenar al jurado de la manera informal en que lo hizo, que continuase deliberando. No debe haber comunicación alguna entre el juez y el jurado después que la causa ha sido sometida a éste, a menos que no sea en corte abierta y en presencia del acusado y su abogado, o luego de darle a éstos plena oportunidad de estar presentes.(¹) *Shields* v. *United States,* 273 U.S. 583, 71 L. Ed. 787; *Filippon* v. *Albion Vein Slate Co.,* 250 U. S. 76, 63 L. Ed. 853; *Outlaw* v. *United States,* 81 F.2d 805; *Little* v. *United States,* 73 F.2d 861; *Byerley* v. *Commonwealth,* 297 Ky. 782, 181 S. W.2d 429; *State* v. *Beal,* 146 P.2d 175, 48

(¹)Compárese el art. 275 del Código de Enjuiciamiento Criminal.

N.M. 84; *Hopson* v. *The State,* 116 Ga. 90, 42 S.E. 412; *Kinnemer* v. *State,* 66 Ark. 206, 49 S. W. 815; *State* v. *Wroth,* 15 Wash. 621, 47 P. 106; *Jones* v. *State,* 26 Ohio St. 208; *Witt* v. *State,* 5 Coldw. (Tenn.) 11; *Holton* v. *State,* 2 Fla. 476; *Sargent* v. *Roberts et al.,* 1 Pick (Mass.) 337, 11 Am. Dec. 185. En todo caso en que la corte o alguno de sus funcionarios comete el error de comunicarse con el jurado respecto al caso(2) y fuera de sala, se presume perjudicial el error a menos que se pruebe afirmativamente que no ha habido perjuicio. *Wheaton* v. *United States,* 133 F.2d 522; *Chambers* v. *United States,* 237 F. 513. Y si la comunicación del juez al jurado es de tal naturaleza que forma parte de los procedimientos en el caso,(2) el error de la corte al hacerla en ausencia del acusado, y sin darle oportunidad de estar presente, es fatal, aunque el contenido de la comunicación no sea impropio, ya que se priva al acusado de su derecho a estar presente durante todas las etapas del juicio. *Shields* v. *United States,* *Outlaw* v. *United States,* y los casos de *Hopson, Kinnemer, Jones, Witt* y *Holton,* supra.

En los casos de *Hopson, Kinnemer, Jones* y *Witt,* supra, la corte repitió, o releyó al jurado, en corte abierta pero en ausencia del acusado, las instrucciones originalmente dadas, y se resolvió que procedía la revocación de las sentencias por haberse privado al acusado de su derecho a estar presente durante todas las etapas del juicio. En los de *Holton* y *Outlaw* se resolvió lo mismo, siendo la única diferencia entre estos casos y los otros que en vez de releerse las instrucciones al jurado en corte abierta se envió al jurado una copia de las instrucciones.

---

(2) Es casi innecesario añadir que la doctrina a que hacemos referencia no es aplicable a aquellas comunicaciones ajenas al caso que sean necesarias para atender las necesidades del jurado, como aquéllas que tengan que ver con el alojamiento y la alimentación del jurado, por ejemplo. Tampoco es aplicable a aquellas comunicaciones que autoriza la ley, como por ejemplo el preguntarle el alguacil al jurado si ha llegado a un acuerdo, pregunta autorizada por el artículo 267 del Código de Enjuiciamiento Criminal.

El caso de *Shields* v. *United States,* supra, no es sustancialmente diferente del que nos ocupa. En dicho caso los abogados de ambas partes pidieron al juez que no disolviera al jurado hasta que no llegara a un acuerdo. Después de prolongada deliberación el jurado avisó al juez por escrito, en la forma usual de un veredicto, que encontraba culpable a ciertos acusados e inocentes a otros, y que en cuanto a tres de los acusados no podía llegar a un acuerdo. El juez contestó, por escrito, que el jurado debía determinar si esos tres acusados eran o no culpables. Posteriormente el jurado rindió un veredicto de culpabilidad, con recomendación de clemencia, en cuanto a los tres acusados. Uno de ellos apeló, y la Corte de Circuito confirmó la sentencia. El Tribunal Supremo de Estados Unidos revocó, diciendo:

" . . . La solicitud hecha a la corte conjuntamente por los abogados del acusado y del gobierno no justificó la excepción a la regla respecto a la conducta ordenada de un juicio por jurado, que da derecho al acusado, especialmente por tratarse de una causa criminal,(³) a estar presente desde que se insacula el jurado hasta que se disuelve después de haber rendido su veredicto."

El único caso que conocemos contrario a la regla establecida en *Shields.* v. *United States,* supra, es el de *Holland* v. *People,* 30 Colo. 94, 69 P. 519, en el cual uno de los miembros del jurado avisó que necesitaba los servicios de un médico, se trajo al jurado a sala, en ausencia del acusado y su abogado, y según certificó el juez después (no se tomaron notas taquigráficas de lo ocurrido), preguntó éste al jurado si el conflicto existente entre ellos era en cuanto a cuestiones de hecho o de derecho, contestando el jurado que era en cuanto a cuestiones de hecho. Prosiguió el juez, según su certificación, a inquirir si el alguacil o alguna otra persona había

---

(³)En algunas jurisdicciones se ha resuelto, en casos civiles, que el juez puede instruir en corte abierta al jurado que continúe deliberando, en ausencia de las partes y sus abogados, a base de la teoría de que es deber de los abogados estar presente en la corte hasta que termine el juicio. *Kullberg* v. *O'Donnell,* 33 N.E. (Mass.) 528; *Burton* v. *Neill,* 118 N.W. (Iowa) 302; *Ashford* v. *McKee,* 183 Ala. 620, 62 So. 879; *Hutchins* v. *Haffner,* 63 Colo. 365, 167 Pac. 966.

tratado de hablarles del caso, a lo que se le contestó en la negativa, y el juez entonces instruyó al jurado se retirara a deliberar. El acusado presentó *affidavits* al efecto de que la certificación del juez en cuanto a lo ocurrido no era correcta, pero se resolvió que no podían considerarse los affidavits, por ser definitiva la certificación del juez. Se resolvió además que el incidente no constituía parte del procedimiento, por lo que no podía decirse que se había privado al acusado de su derecho a estar presente durante todas las etapas del juicio. No estamos de acuerdo con la doctrina sentada. El caso precisamente ilustra la gravedad del perjuicio que se le causa a un acusado mediante comunicaciones entre el juez y el jurado que el acusado desconoce. Como se dijo en *State* v. *Wroth*, supra, caso en que el juez, a solicitud del jurado, acudió a la puerta del salón de deliberaciones, donde el jurado le pidió repitiera una instrucción, y se revocó por ello la sentencia, a pesar de que el juez certificó que se negó a hablarle al jurado, y se retiró inmediatamente:

"El ilustrado abogado del gobierno insiste en que el juez nada dijo al jurado, y que por lo tanto su conducta no puede haber perjudicado al acusado. Pero la ley no somete a los litigantes a la desventaja de venir obligados a aceptar aun la manifestación del juez en cuanto a lo ocurrido entre él y el jurado en un sitio donde el juez no debe estar, y donde no puede exigirse a los litigantes que acudan. La parte tiene un derecho legítimo a que su causa se ventile en corte abierta, con oportunidad de estar presente y ser oída respecto a todo lo que transcurra. Tiene derecho a estar presente, asistida de abogado, en todo momento en que sea necesario o conveniente que la corte se comunique con el jurado, y no puede pedírsele que dependa de la memoria o del sentido de justicia del juez respecto a lo ocurrido entre el juez y el jurado en cualquier momento o lugar en que ella no tenga derecho a estar presente. Su derecho en este respecto llega a la verdadera sustancia del juicio por jurado."

Es cierto que en el caso de autos, el juez no se comunicó directamente con el jurado, sino que lo hizo por conducto del alguacil. Ello no aminora el mal que encarna la comunica-

ción privada entre juez y jurado, sino que más bien lo agrava. No existe récord de lo que le dijera el alguacil al jurado. En un caso similar al nuestro, la forma en que el alguacil transmitió al jurado un mensaje del juez vino claramente a perjudicar los intereses del acusado, y produjo la revocación de la sentencia. *Allen* v. *State* (Miss.), 159 So. 533.

No se trata, pues, de una trivial desviación del procedimiento. Tampoco es puramente técnica la regla establecida en la jurisprudencia citada, ni su aplicación a este caso. Cuando el jurado anuncia que no puede llegar a un acuerdo, está el proceso en uno de sus momentos críticos. Si bien la corte tiene discreción para determinar si debe o no instar al jurado a continuar deliberando,(4) no debe hacerlo sin oír al jurado en sala. En muchas ocasiones resulta, como pudo haber resultado en el caso de autos, que el desacuerdo del jurado se basa en cuestiones de hecho o de derecho que, al regresar el jurado a sala y tener la oportunidad de solicitar o recibir instrucciones adicionales, o de oír nuevamente la declaración de algún testigo, quedan aclaradas, eliminándose la base para el desacuerdo. Y aun cuando el conflicto en el seno del jurado no pueda resolverse con instrucciones adicionales o lectura de declaraciones, si la corte estima propio instar al jurado que continúe sus deliberaciones, debe hacerlo en forma tal que el jurado no se sienta coaccionado. El acusado tiene derecho a estar presente cuando esa crisis surge en el procedimiento, para ver que, al sortearla la corte, no se perjudiquen sus intereses, y para tener la oportunidad de solicitar de la corte las instrucciones que estime propias, y la modificación de aquéllas que estime impropias. De ese derecho fué privado en el caso de autos, y no podemos decir que el error no le perjudicara.

*Por los fundamentos expuestos debe revocarse la sentencia apelada y devolverse el caso a la corte inferior para que se celebre un nuevo juicio.*

---

(4)*Pueblo* v. *Berdecia*, 59 D.P.R. 318.