EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MÁTÍAS GONZÁLEZ RAMÍREZ, acusado y apelante.

Núm. 11,564.—*Sometido:* Diciembre 13, 1946. *Resuelto:* Febrero 4, 1947.

*Font & Vivas,* abogados del apelante; *Hon. Procurador General Interino Luis Negrón Fernández (E. Campos del Toro, ex Procurador General,* en el alegato) y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal

Matías González Ramírez fué convicto de un delito de asesinato en segundo grado. Solicitó un nuevo juicio, le fué denegado y la corte le condenó a la pena de diez años de presidio. El presente recurso ha sido interpuesto contra la resolución denegatoria del nuevo juicio y contra la sentencia.

El primer señalamiento se basa en la alegación de que mientras el jurado estaba deliberando, personas extrañas se comunicaron con el jurado haciendo llegar al mismo

modelos de veredicto que no fueron ordenados por la corte previa intervención de las partes. Sostiene el apelante que ese hecho viola las reglas de la corte y destruye el derecho que tiene el acusado a un juicio imparcial. De acuerdo con la evidencia ofrecida en el acto de la vista de la moción de nuevo juicio, los hechos son como sigue:

Encontrándose el jurado en el cuarto de deliberaciones, el submárshal de la corte de distrito, quien tenía al jurado bajo su custodia, fué llamado por el jurado. Al oír el timbre, creyó el submárshal que el jurado tenía veredicto y subió hasta el cuarto de deliberaciones. Al llegar allí uno de los jurados le pidió que, si era posible, les consiguiera un modelo de veredicto en blanco porque se les había dañado el que la corte les había dado. El submárshal fué donde el secretario y éste le entregó un blanco de veredicto, el cual fué entregado al presidente del jurado por el mismo submárshal. En ese mismo blanco se escribió el veredicto en contra del acusado.

El jurado Jesús Cales identificó el veredicto como el mismo que había sido rendido. Declaró que ellos, los miembros del jurado, obtuvieron el modelo en blanco a través del submárshal Godoy; que el jurado le pidió el blanco al submárshal porque el que les dió la corte se había dañado; que él vió el blanco que se dañó.

En la resolución denegando el nuevo juicio, el juez de la córte inferior hizo constar expresamente "que examinó el veredicto del jurado tal como aparece del expediente y vió también el que originalmente se entregó al presidente del jurado, que no aparece del récord, y ambos son idénticos"; que de la prueba practicada resulta que el márshal no se comunicó con el jurado en forma alguna sobre los méritos del caso; que quedó establecido por la prueba, que cuando los señores del jurado llamaron al márshal, ya habían llegado a un acuerdo en el caso, y que al reducirlo a escrito, o sea, al llenar el hueco correspondiente en el modelo que les había entregado la corte, se les dañó; y que el márshal,

por lo tanto, no pudo haber influído, ni influyó, según resulta de la prueba, en la decisión del caso.

El artículo 267 del Código de Enjuiciamiento Criminal dispone lo siguiente:

"Después de oído el resumen de lo que se les encarga decidir, el jurado podrá resolver sobre ello en la misma sala del tribunal, o retirarse para deliberar. Si no llegasen a un acuerdo en el acto, deberá juramentarse a un oficial del tribunal para que los tenga juntos en algún sitio privado y conveniente, no permitiendo que nadie, incluso él mismo, les hable o se comunique con ellos, sino por orden expresa del tribunal o para preguntarles si han llegado a un acuerdo sobre su veredicto, y en este caso, o cuando lo ordenase el tribunal, conducirlos de nuevo a la sala."

En *Pueblo* v. *Saldaña*, 66 D.P.R. 189, aplicando a los hechos del caso las disposiciones del citado artículo 267 y la doctrina sentada por numerosas decisiones de las jurisdicciones estatales y federal, resolvimos que la corte inferior había cometido un error perjudicial a los derechos del acusado cuando después de haber avisado el jurado al juez, por conducto del alguacil, que deseaba regresar a sala porque no podía ponerse de acuerdo, el juez se limitó a instruir al alguacil informara al jurado que continuara deliberando, no obstante haberle pedido el abogado defensor que accediera a los deseos del jurado. Media hora después de recibir la comunicación del juez, rindió el jurado veredicto declarando al acusado culpable de homicidio. Al revocar la sentencia y ordenar la celebración de un nuevo juicio, dijimos:

"La corte erró, a nuestro juicio, al no acceder al deseo del jurado de regresar a sala, y al ordenar al jurado de la manera informal en que lo hizo, que continuase deliberando. No debe haber comunicación alguna entre el juez y el jurado después que la causa ha sido sometida a éste, a menos que no sea en corte abierta y en presencia del acusado y su abogado, o luego de darle a éstos plena oportunidad de estar presentes. (Citas.) En todo caso en qué la corte o alguno de sus funcionarios comete el error de comunicarse con el jurado respecto al caso y fuera de sala, se presume perjudicial el error a menos que se pruebe afirmativamente que no ha habido perjuicio."

La conducta del submárshal fué, sin duda alguna, impropia y, como tal, digna de censura. El márshal que tiene al jurado bajo su custodia debe abstenerse en absoluto de decir o hacer cosa alguna que pueda tener relación de clase alguna con el caso que el jurado tiene bajo su consideración. El márshal y los funcionarios bajo sus órdenes deben limitar su intervención con el jurado a aquellos actos o palabras que fueren absolutamente necesarios para atender a cualquier necesidad del jurado o para el *comfort*, alojamiento y alimentación de sus miembros. La estricta observancia de esta regla evitará quejas y objeciones como las formuladas en este caso y contribuirá sin duda alguna a mantener en alto el prestigio de la institución del jurado.

En *Shields* v. *United States*, 273 U.S. 583, 71 L. Ed. 787, el jurado, después de haber deliberado durante dos horas envió al juez, en su despacho, una comunicación escrita informándole que encontraban culpables a tres de los acusados y no culpables a otros dos; y que en cuanto a otros dos acusados no habían podido llegar a un acuerdo. El juez les contestó por escrito diciéndoles que ellos debían decidir también si los dos acusados restantes eran culpables o inocentes. Dichos acusados ni sus abogados tuvieron conocimiento de estas comunicaciones entre el juez y el jurado. Poco después de recibir la comunicación del juez el jurado rindió su veredicto, declarando a los dos acusados culpables del primero de los cargos. Dos meses más tarde, cuando el acusado se enteró de lo ocurrido, pidió a la Corte le permitiese anotar una excepción. La Corte se negó a ello, basándose en que el abogado del acusado había pedido a la Corte que mantuviese al jurado deliberando hasta que llegasen a un veredicto. La Corte Suprema revocó la sentencia y ordenó un nuevo juicio, sosteniendo que "Cuando un jurado se ha retirado para considerar su veredicto y se hace necesario darle instrucciones suplementarias, bien sea porque el jurado las pidiera o por otras razones, las mismas deben ser comunicadas al ju-

rado en presencia del abogado o después que se le haya avi-, sado y dado oportunidad para estar presente; y no debe enviarse instrucciones por escrito al jurado sin aviso al abogado y oportunidad para que éste formule sus objeciones." *Fillippon* v. *Albion Vein Slate Co.*, 250 U. S. 76. En *Little* v. *United States*, 72 F.2d 861, el error que causó la revocación de la sentencia consistió en que habiendo el jurado enviado una nota al juez en su despacho, solicitando una copia de las instrucciones de la Corte, el juez en corte abierta y estando presente el abogado defensor, quien formuló su objeción, ordenó al taquígrafo que fuese al cuarto del jurado y les leyera las instrucciones en su totalidad, sin repetir o poner énfasis en parte alguna de las mismas. Al revocar la sentencia la Corte de Circuito se expresó así:

"Empero, enviar un taquígrafo al cuarto del jurado, para leer allí, en ausencia del acusado y su abogado, las instrucciones de la Corte presenta una cuestión muy diferente. Es cierto que puede ser que con ello no se cause daño alguno; pero, por otro lado, una equivocación en la lectura de un signo taquigráfico, del cual se daría cuenta inmediatamente el abogado defensor, un énfasis inconsciente o deliberado o la falta del mismo, un esfuerzo inocente para explicar el significado de una palabra o de una frase, y muchas otras cosas que podrían muy bien ocurrir, resultarían en un daño irremediable para el acusado.

*    *    *    *    *    *    *

En el caso ante nos, el record guarda silencio en cuanto a lo que ocurrió en el cuarto del jurado. *No hay nada, pues, en este récord para sostener la conclusión, hecha afirmativamente en los casos citados, de que el error fué necesariamente no perjudicial.*" (Bastardillas nuestras.)

La Corte Suprema Federal en *Mattox* v. *United States*, 146 U. S. 140, 36 L. Ed. 917, estableció la regla siguiente:

"Comunicaciones privadas, posiblemente perjudiciales, entre jurados y terceras personas, o testigos, o el funcionario a cargo del jurado, están absolutamente prohibidas, e invalidan el veredicto, *por lo menos hasta que se demuestre que no causaron perjuicio*" (Bastardillas nuestras.)

En *Outlaw* v. *United States,* 81 F.2d 805, el jurado, después de estar deliberando por algún tiempo envió al juez una comunicación informándole que deseaban una copia de las instrucciones. El juez ordenó al taquígrafo que las transcribiese, las examinó y las envió al cuarto del jurado. Ni el acusado ni su abogado se enteraron de lo ocurrido sino hasta después del veredicto y de haber sido disuelto el jurado. La cuestión levantada en la apelación fué que "el juez no debió tener comunicación alguna con el jurado, a no ser en corte abierta y con el conocimiento del acusado y de su abogado." La Corte de Circuito confirmó la sentencia, diciendo:

"Aun cuando una comunicación privada entre el juez y el jurado es generalmente irregular y errónea, puede ser que no en todos los casos impida un juicio constitucional o legal. Muchos actos de mala conducta por parte de los jurados no producen ese resultado, *pues pueden ser subsanados mediante demostración de que no pudieron causar perjuicio alguno.* Si el juez en este caso hubiese dado al jurado una instrucción incorrecta o por lo menos una instrucción nueva, estaríamos preparados para sostener que la denegación de una oportunidad de oirla y de tomar excepción contra ella, sería causa bastante para un nuevo juicio. *Porque aparece claramente que el jurado recibió sólo y exactamente lo mismo que ya se le había comunicado,* sin objeción y en la forma usual en Texas y que no es ahora motivo de queja, *creemos que no se infringió ningún derecho substancial* y que el error de procedimiento puede ser considerado como un error técnico. Si el jurado hubiese sido llamado y las instrucciones leídas en presencia del apelante, no puede suponerse un resultado diferente."

Los casos que acabamos de analizar y muchos otros citados en *Pueblo* v. *Saldaña,* supra, sostienen la doctrina que establecimos en dicho caso o sea que "en todo caso en que la Corte o alguno de sus funcionarios comete el error de comunicarse con el jurado con respecto al caso y fuera de sala, se presume perjudicial el error a menos que se pruebe afirmativamente que no ha habido perjuicio."

Aplicando dicha doctrina a los hechos del presente caso y resultando afirmativamente probado que no hubo perjuicio

alguno para el acusado, sino que por el contrario lo que el márshal hizo en este caso fué para la conveniencia del jurado, dentro del significado de la Nota 2, en *Pueblo v. Saldaña*, supra, pág. 191, creemos y así lo resolvemos que *la resolución y la sentencia apeladas deben ser confirmadas*.

Creemos innecesario discutir el segundo señalamiento por ser el mismo claramente frívolo.

Opinión disidente emitida por el Juez Asociado Señor Todd, Jr.

Considero que el incidente ocurrido en este caso es más censurable y su aceptación como error no perjudicial más grave que el que ocurrió en el de *Pueblo v. Saldaña*, 66 D. P.R. 189, y el cual dió lugar a que revocáramos la sentencia y ordenáramos la celebración de un nuevo juicio. Recuérdese que en el caso de *Pueblo v. Saldaña* ocurrió lo siguiente: "Algún tiempo después de estar deliberando el jurado que entendía en el caso, avisó el jurado al juez, por conducto del alguacil, que deseaba regresar a sala porque no podía ponerse de acuerdo. *Estaba presente el abogado defensor*, quien pidió al juez accediera a los deseos del jurado, pero el juez se limitó a instruir al alguacil informara al jurado que continuara, deliberando. Media hora más tarde rindió el jurado veredicto declarando al acusado culpable de homicidio voluntario, y recomendó 'la mayor clemencia para el acusado en vista de las circunstancias de este caso.' El abogado defensor pidió entonces se dejara sin efecto el veredicto, por razón de lo ocurrido al anunciar el jurado que no podía ponerse de acuerdo, sosteniendo que eso trajo por resultado un veredicto por transacción. La corte declaró sin lugar la moción. . . . '' (Bastardillas nuestras.) Y resolvimos que ''No debe haber comunicación alguna entre el juez y el jurado después que la causa ha sido sometida a éste, a menos que no sea en corte abierta y en presencia del acusado y su abogado, o luego de darle a éstos plena oportunidad de estar presentes.''

Sostengo que el incidente en el caso de autos es más censurable porque el alguacil violó las disposiciones del artículo 267 del Código de Enjuiciamiento Criminal que prohíbe que nadie, "incluso él mismo, *les hable o se comunique con ellos, sino por orden expresa del tribunal* o para preguntarles si han llegado a un acuerdo sobre su veredicto, . . .". (Bastardillas nuestras.) El alguacil en este caso al ser llamado por el jurado e informado por éste que el modelo de veredicto que les había sido entregado por la corte al retirarse a deliberar se había dañado, no tenía poder, sin autorización de la corte concedida en sala y en presencia del acusado y sus abogados, para solicitar un nuevo modelo de veredicto del secretario y llevarlo al jurado. Tampoco tenía poder el secretario para preparar un nuevo modelo, por su cuenta, y enviarlo al jurado. Ambas actuaciones fueron realizadas sin la "orden expresa del tribunal" que exige el artículo 267, supra, y aceptar que pueden los funcionarios de la corte comunicarse con el jurado para sustituir un documento oficial sin existir dicha orden y sin la intervención del acusado es, a mi juicio, establecer un precedente contrario al mandato expreso de la ley. De acuerdo con la jurisprudencia citada en el caso de *Saldaña,* supra, el error es fatal "aunque el contenido de la comunicación no sea impropio, ya que se priva al acusado de su derecho a estar presente durante todas las etapas del juicio." Y mientras no se rinde el veredicto por el jurado cualquier incidente que surja en el cuarto de deliberaciones que requiera la intervención de la corte constituye una "etapa" del juicio. Ese derecho del acusado a estar presente se extiende " . . . desde que se insacula el jurado hasta que se disuelve *después* de haber rendido su veredicto." *Shields* v. *United States,* 273 U. S. 583.

Como se dijo en el caso de *State* v. *Wroth,* 47 Pac. 106: "La parte tiene un derecho legítimo a que su causa se ventile en corte abierta, con oportunidad de estar presente

y ser oída respecto *a todo lo que transcurra.* Tiene derecho a estar presente, asistida de abogado, en todo momento en que sea necesario o conveniente que la corte se comunique con el jurado, y *no puede pedírsele que dependa de la memoria o del sentido de justicia del juez respecto a lo ocurrido entre el juez y el jurado en cualquier momento o lugar en que ella no tenga derecho a estar presente. . . .''* (Bastardillas nuestras.)

En igual forma en el caso de autos al acusado no puede pedírsele que dependa de la memoria o del sentido de justicia del alguacil o del secretario respecto a lo que ocurrió entre ellos y el jurado en momentos en que el acusado no estaba presente. No debemos olvidar que en el caso de *Saldaña,* supra, el juez no se comunicó directamente con el jurado sino que lo hizo por conducto del alguacil y se resolvió que ese hecho en lugar de aminorar el mal lo agravaba. En el caso de autos el secretario y el alguacil hicieron llegar al jurado un nuevo modelo de veredicto que según la memoria del juez era idéntico al original. Tampoco estaba obligado el acusado a depender de la memoria del juez o del jurado en cuanto a dichos hechos. El acusado tenía derecho por ley a que cualquier cambio que se hiciera en los documentos oficiales en posesión del jurado fuera hecho en corte abierta y en su presencia. En mi opinión la presunción de que el error cometido fué perjudicial no fué destruída por la prueba.

A mi juicio se incurre en una contradicción al sostenerse que la conducta del alguacil fué, sin duda alguna, impropia y digna de censura y que tanto él como los funcionarios a sus órdenes deben limitar su intervención con el jurado a aquellos actos o palabras que especifica el artículo 267, supra, y al mismo tiempo resolver que "lo que el márshal hizo en este caso fué para la conveniencia del jurado, dentro del significado de la nota 2, en *Pueblo* v. *Saldaña,* supra, pág. 191 . . . ''.

En dicha nota 2 se dijo que la doctrina sobre presunción de error perjudicial en estos casos "no es aplicable a aquellas comunicaciones ajenas al caso que sean necesarias para atender las necesidades del jurado, como aquéllas que tengan que ver con el alojamiento y la alimentación del jurado . . ." o "el preguntarle el alguacil al jurado si ha llegado a un acuerdo . . .". Si lo que hizo el alguacil en este caso fué para la conveniencia del jurado dentro del alcance de la nota 2, no hay razón para calificar su conducta como impropia y digna de censura. Creo que la sentencia debe ser revocada y concederse un nuevo juicio.