EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DOMINGO EMMANUELLI FONTÁNEZ, conocido por DOMINGO EMMANUELLI, acusado y apelante.

Núm. 11955.—*Sometido:* Junio 3, 1947. *Resuelto:* Julio 22, 1947.

*Miguel Guerra-Mondragón y Guillermo Cintrón Ayuso,* abogados del apelante; *Hon. Procurador General Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Domingo Emmanuelli Fontánez fué acusado ante la Corte de Distrito de Ponce de un delito de asesinato en primer grado, convicto por un jurado de asesinato en segundo grado y sentenciado por la corte a cumplir de doce a veinticuatro

años de presidio.(¹) Antes de dictarse sentencia el acusado solicitó se le concediera un nuevo juicio, el cual le fué denegado. Solicitó además, que se ordenara al Oficial Probatorio que practicara la investigación correspondiente con el fin de que la corte suspendiera en su día los efectos de la sentencia de acuerdo con la Ley núm. 259 de 3 de abril de 1946 ((1) pág. 535).

La corte accedió a esta última petición y el Oficial Probatorio rindió su informe a la corte recomendando se suspendiera la sentencia que se dictara en el caso. Esto no obstante la corte inferior resolvió que no procedía suspendérsela por los motivos que más adelante expondremos.

- El acusado apeló, tanto de la sentencia como de la resolución denegatoria del nuevo juicio, y en este recurso alega que la corte inferior erró, primero, al denegar la moción de nuevo juicio, y segundo, al denegar la solicitud de sentencia probatoria. Veamos el primer señalamiento.

██ La moción de nuevo juicio presentada por el acusado se basó en los dos fundamentos siguientes:

"(a) Porque durante el juicio, una persona, que resultó ser el detective Coca Duchesne, a quien constantemente se le veía con el Fiscal que actuaba en este caso, Sr. José C. Aponte, hizo llegar a los señores del Jurado, la impresión de que habrían de castigar al acusado, del delito de asesinato.

"(b) Porque durante el juicio, y mientras se encontraban en el cuarto de deliberaciones en la Corte de Distrito de Ponce, los jurados Cristóbal Santiago y Francisco del Valle, fueron registrados en sus respectivas personas, y en tal forma fueron impresionados dichos jurados, que estuvieron impedidos de resolver la causa de una manera correcta y concienzuda. (Apartados 2 y 3, Artículo 303, Código de Enjuiciamiento Criminal.)"

Con la moción se radicaron declaraciones juradas prestadas por los señores Cristóbal Santiago y Francisco del

---

(¹)Esta sentencia indeterminada se dictó bajo la Ley núm. 295 aprobada el 10 de abril de 1946 ((1) pág. 759) que establece esta clase de sentencias en Puerto Rico.

Valle, dos de los jurados que actuaron en el caso y otras por los señores Manuel A. Emmanuelli, hermano del acusado, y José Reyes Torres.

En síntesis las declaraciones juradas tienden a sostener· lo que se hizo constar en la moción de nuevo juicio, aunque existen contradicciones entre unas y otras. Los incidentes mencionados ocurrieron antes de haber terminado la vista del caso y de haberse retirado a deliberar el jurado. En cuanto al señalado con la letra (a) en la moción de nuevo juicio, de las declaraciones juradas de los señores Emmanuelli y Reyes aparece que el juez que presidía la corte, Sr. Luis R. Polo, en presencia del abogado del acusado, Sr. Susoni, Jr., realizó la investigación correspondiente. Esto no obstante, la defensa no planteó ante la corte, ni en aquel momento ni en ningún otro durante el resto del juicio, cuestión alguna de *mistrial* o de otra naturaleza. Aparentemente, no creyó que los derechos del acusado habían sido perjudicados y permitió que el juicio continuara hasta su terminación el 15 de septiembre de 1946. No fué hasta dos meses después, o sea el 15 de noviembre de 1946, que radicó su moción de nuevo juicio basada exclusivamente en los hechos supuestamente ocurridos durante el juicio.

Es doctrina establecida que un acusado no debe permanecer callado cuando ocurre alguna anormalidad durante el juicio que él considere perjudicial a sus derechos y esperar la terminación del caso para luego, en apelación, si el veredicto le es adverso, señalar dicha anormalidad como error. *Baldwin* v. *Kansas*, 129 U.S. 52; *Pueblo* v. *Báez*, 45 D.P.R. 512; *Pueblo* v. *Arroyo Madera*, 67 D.P.R. 36; *Pueblo* v. *Márquez*, ante, pág. 327. En 96 A.L.R. 530 se expone esta doctrina haciéndola extensiva a las mociones de nuevo juicio, en esta forma:

"La regla general es que mala conducta (*misconduct*) por parte de cualquier persona en relación con el jurado después que se retira, aunque sea de un carácter que podría viciar el veredicto si se hubiera llamado la atención de la corte por queja oportuna, no pro-

cede después de rendido el veredicto, *como motivo de nuevo juicio o revocación,* cuando era conocida del acusado o su abogado antes de rendirse el veredicto." (Bastardillas nuestras.)

Para que proceda un nuevo juicio debido a demostraciones u otra mala conducta por parte del público o espectadores de un juicio, la objeción debe hacerse antes de que el jurado rinda veredicto. *Powell* v. *State,* 141 So. 201 (revocado por otros motivos en *Powell* v. *State of Alabama,* 287 U.S. 45).

Como hemos dicho, el abogado del acusado en este caso nó sólo tuvo conocimiento del hecho que se expone en el apartado (*a*) de la moción de nuevo juicio, inmediatamente de haber ocurrido, sino que intervino con el juez en su investigación. Al permanecer callado aceptó que los derechos de su representado no habían sido perjudicados. No erró la corte inferior al denegar el nuevo juicio solicitado por dicho motivo.

En cuanto al señalado con la letra (*b*) se fundamenta en las declaraciones juradas de los jurados, señores Santiago y Del Valle, al efecto de que los miembros del jurado fueron registrados en el cuarto de deliberaciones, según el Sr. Santiago, por un alguacil, y según el Sr. Del Valle, por el alguacil y dos personas más que no conocía, y que este hecho no les permitió, cuando finalmente se sometió el caso al jurado, discutir ciertos particulares de la prueba y las incidencias del juicio.

No obstante este incidente, al rendir el jurado su veredicto condenatorio y ser preguntado cada uno de los jurados por separado si ése era su veredicto, todos contestaron en la afirmativa. Si era cierto que los jurados señores Santiago y Del Valle no habían podido considerar la prueba debido al incidente antes mencionado, aquél fué el momento oportuno para exponerlo ante la corte. No lo hicieron sino que individualmente ratificaron el veredicto rendido. Esperaron que transcurrieran dos meses para entonces prestar unas declaraciones juradas atacando su propia actuación.

El inciso 4 del artículo 303 del Código de Enjuiciamiento Criminal dispone que se puede conceder un nuevo juicio "cuando el veredicto se hubiere obtenido por suerte o cualquier otro medio que no fuere una expresión verdadera de la opinión de todos los miembros del jurado."

Hemos resuelto que bajo este inciso no procede la concesión de un nuevo juicio por el hecho de que uno o más jurados presten declaraciones juradas al efecto de que fueron inducidos a rendir un veredicto de asesinato en segundo grado, con recomendación de clemencia, bajo la creencia de que éste era equivalente al de homicidio voluntario, *Pueblo v. Ramírez,* 50 D.P.R. 234; o que rindió tal veredicto por inexperiencia, *Pueblo v. Lebrón,* 47 D.P.R. 430; o que rindió el veredicto de asesinato en segundo grado en la creencia de que no podía rendirse el de homicidio involuntario, *Pueblo v. Cruz,* 49 D.P.R. 653.

La regla general en California es que los jurados están incapacitados legalmente para impugnar su veredicto en cualquier forma, bien sea por *affidavits* o por testimonio oral, excepto en los casos expresamente prescritos por ley. 8 Cal. Jur. 436, sec. 458; 7 McKinney, New California Digest 549; *People v. Kennedy,* 69 P.2d 224; *People v. Gidney,* 73 P.2d 1186.

En cuanto a la admisibilidad de affidavits o testimonio oral por miembros del jurado para demostrar actuaciones impropias o comunicaciones de terceras personas con el jurado mientras delibera, las autoridades están divididas pero la mayoría sostiene su admisibilidad. 90 A.L.R. 249; 146 A.L.R. 514.

En el caso de autos nada anormal ocurrió mientras el jurado estaba deliberando. Lo resuelto en los casos de *Pueblo v. Saldaña,* 66 D.P.R. 189, y *Pueblo v. González,* 66 D.P.R. 903, citados por el apelante, no es aplicable ya que no se trata en el presente de comunicaciones de terceras personas con el jurado mientras está deliberando, en violación del ar-

tículo 267 del Código de Enjuiciamiento Criminal y, además, en aquéllos no se planteó ni resolvió si eran o no admisibles affidavits de miembros del jurado para impugnar su propio veredicto. Somos de opinión que la corte inferior no erró al no tomar en consideración los affidavits de los jurados señores Santiago y Del Valle. Bajo las circunstancias concurrentes no eran admisibles para sostener la moción de nuevo juicio. El hecho a que se referían dichos affidavits ocurrió antes de terminar el juicio y de ser sometido el caso a la deliberación del jurado. Tanto los jurados que suscribieron dichos affidavits como los demás que constituían el panel, tuvieron amplia oportunidad de informar a la corte si algo anormal había ocurrido. Esperar que transcurrieran dos meses después de terminado el caso, para entonces decir que determinado incidente (que pudo y debió haber sido investigado por la corte inmediatamente de haber ocurrido, si ocurrió) no les permitió: "discutir ciertos particulares sobre la evidencia," según el jurado señor Santiago, o sentirse "en libertad de discutir las incidencias y pruebas del juicio," según el jurado señor Del Valle, y pretender que con declaraciones de esta naturaleza se anule un veredicto, el cual al rendirse, esos dos jurados—y todos los demás—individualmente, aceptaron como su propio veredicto, sería establecer un precedente contrario a una sana política pública. Al prestar juramento para servir como jurados se obligaron todos a resolver el caso por la apreciación de la prueba presentada guiados por las instrucciones de la corte en cuanto a la ley aplicable. La presunción es que el jurado cumplió con su deber y que el incidente que mencionan dos de sus miembros, de haber ocurrido, no influyó en su veredicto, no obstante lo que aparentemente creyeran dos meses después de rendido. No se cometió el primer error señalado.

▮ En cuanto al segundo que se refiere al hecho de no haber la corte inferior suspendido la sentencia impuesta, de acuerdo con el artículo 2 de la Ley núm. 259 aprobada el

3 de abril de 1946 (Leyes 1946, pág. 535),([2]) arguye el apelante que habiendo el Oficial Probatorio rendido un informe favorable a que se le impusiera una sentencia probatoria "el juez carecía de discreción para negar dicha sentencia y tenía que atenerse al informe del Oficial Probatorio."

No tiene razón el apelante. Nada encontramos en el artículo 2, supra, que tienda a demostrar que fué la intención del legislador sustituir el criterio jurídico de un juez, por el de un oficial probatorio lego en cuestiones legales. El informe del oficial probatorio constituye el reflejo de la investigación por él practicada en cuanto a las circunstancias del delito cometido, los antecedentes de familia e historia social del acusado. Es cierto que el artículo 2 dice además que "tal investigación revele que dicho acusado siempre fué un ciudadano respetuoso y cumplidor de la ley" y suponemos que en el rendido en este caso([3]) el oficial probatorio hizo constar que el apelante siempre lo fué. Esto no obstante la corte sentenciadora al denegar la sentencia probatoria hizo constar que si bien el acusado no había sido sentenciado

---

([2]) Dicho artículo 2 provee:

"El efecto de la sentencia que se imponga a toda persona que cometa cualquier delito grave que no sea asesinato en primer grado, deberá ser suspendida y el sentenciado puesto a prueba, siempre que, al tiempo de imponer dicha sentencia, concurran los siguientes requisitos: (a) que el acusado no haya sido convicto, sentenciado y recluído en prisión por delito alguno con anterioridad a la comisión del delito por el cual está siendo procesado, (b) que el delito cometido no evidencie aquel grado de deformación moral que hace indispensable que, para poder intentar su reforma, se recluya al delincuente en un establecimiento penal, (c) que la corte sentenciadora tenga ante sí un informe que le haya sido rendido por un Oficial Probatorio de la Corte o de la Junta de Libertad Bajo Palabra, después de dicho Oficial Probatorio haber practicado una investigación minuciosa de las circunstancias del delito cometido, los antecedentes de familia e historia social del acusado, y que tal investigación revele que dicho acusado siempre fué un ciudadano respetuoso y cumplidor de la ley; Disponiéndose, que, la corte sentenciadora fijará las condiciones bajo las cuales el acusado será puesto a prueba. Disponiéndose, además, que la corte podrá, a su discreción, además de poner a prueba al sentenciado, imponerle una multa en proporción a la naturaleza del delito cometido."

([3]) Dicho informe no consta en autos. Nada hay en la Ley núm. 259 de 1946 que disponga que los informes de los oficiales probatorios en estos casos deban archivarse con los autos.

y recluído en prisión por delito alguno con anterioridad a la comisión del delito por el que se le juzgaba, sí había sido denunciado, convicto y sentenciado en nueve casos *misdemeanors*, entre ellos uno de acometimiento y agresión grave, y que en todos pagó la multa correspondiente, y concluyó que esos hechos, junto al probado en el caso de autos de que portó el revólver con el cual cometió el delito por los distritos de Guayama y Ponce, demostraba que, a juicio del juez, el acusado no fué ni es un ciudadano respetuoso y cumplidor de la ley. Hizo constar, además, la corte inferior, que las circunstancias que rodearon la comisión del delito en el presente caso, según fueron probadas tanto por la prueba de cargo como de la defensa, revelan en el apelante aquel grado de deformación moral que requiere su ingreso en una penitenciaría para su regeneración.

Hemos examinado la prueba presentada en este caso y estamos convencidos de que la actuación de la corte inferior está plenamente justificada. El uso de la palabra "deberá" en el artículo 2, supra, no significa que sea mandatorio para la corte suspender la sentencia cuando concurran alguno o todos los hechos especificados en el mismo.([4]) La conclusión a que llegue una corte, en cuanto a conceder o no a un acusado el beneficio de la sentencia probatoria, descansa en su sana discreción, teniendo en cuenta, desde luego, todos los hechos del caso y las disposiciones del artículo 2 de la Ley núm. 259, supra. En apelación, no intervendremos para cambiar dicha conclusión, a menos que se nos demuestre que la misma es errónea y sin fundamento en la prueba. En el presente caso no se ha demostrado tal cosa.

*Deben confirmarse la sentencia apelada y la resolución denegando el nuevo juicio.*

---

([4])"La sentencia probatoria o suspendida es un acto de gracia concedido a un convicto de un delito y puede estar sujeto a las condiciones que el Congreso quiera imponer en cuanto a su duración." *Escoe* v. *Zerbst*, 295 U. S. 490, 492.