EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* NEMESIO ARROYO MADERA, acusado y apelante.

Núm. 11584.—*Sometido:* Diciembre 13, 1946.  *Resuelto:*  Marzo 11, 1947.

*C. H. Juliá y Guillermo Pierluisi,* abogados del apelante; *Hon. Procurador General Interino Luis Negrón Fernández (E. Campos del*

*Toro, ex Procurador General,* en el alegato) y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Nemesio Arroyo Madera, acusado de asesinato en segundo grado, antes de comenzar el juicio solicitó de la corte que si se rebajaba la calificación del delito de asesinato en segundo grado a homicidio voluntario, se declararía culpable. El fiscal se allanó a esta petición y el juez estuvo conforme con ello, pero el acusado, después de declararse culpable de homicidio voluntario, manifestó: "Honorable señor. Yo le hice el disparo porque él me atacó con un puñal. En defensa." Ante estas manifestaciones, el juez ordenó que continuara el juicio por asesinato en segundo grado. El acusado fué convicto de asesinato en segundo grado y sentenciado a doce años de presidio y a dos meses de cárcel por portar armas.

■■ Como primer señalamiento se alega que la corte *a quo* cometió grave error al no dar cumplimiento a la Ley núm. 33, de 3 de mayo de 1943 (pág. 87), interrogando a los jurados que actuaron en este caso respecto a si habían sido convictos de delito grave, tal y como lo dispone la mencionada ley.

Es deber de todo abogado, ilustrar e informar a la corte de alguna violación o falta de cumplimiento de las leyes en que la corte incurra, por inadvertencia u otro motivo. No debe el acusado permanecer callado y esperar hasta la terminación del juicio para luego en apelación, si el veredicto le es adverso, señalar este incumplimiento de la ley por la corte inferior, como un error. No menciona el acusado ni aparece del récord en qué forma han sido perjudicados sus derechos. La regla establecida por este Tribunal es al efecto de que errores no perjudiciales al acusado no serán de por sí causa para revocar. En el caso de *Pueblo* v. *Báez,* 45 D. P.R. 512, donde se alegaba por el acusado que la corte ha-

bía cometido error al no tomarle juramento al jurado, este Tribunal dijo: "Además, el apelante estuvo representado en el juicio por dos abogados y no aparece protesta u objeción alguna en el juicio por la falta de ese juramento . . .". "Si el juramento en este caso no fué prestado por el jurado debió llamarse la atención de la corte para que ese defecto pudiera ser corregido." Y en *Baldwin* v. *State of Kansas*, 129 U. S. 52, citado por la corte en *Pueblo* v. *Báez*, supra, la Corte Suprema de los Estados Unidos dijo:

"Una razón aún más contundente para contestar la alegación levantada es que ninguna objeción se hizo por el acusado apelante a la forma del juramento cuando se tomó o en ningún otro tiempo antes de haberse presentado el caso ante esta corte. Si existió alguna irregularidad a ese respecto debió haber sido levantada al momento en que ocurrió. . . . Un acusado no puede permanecer callado y silencioso a la expectativa y correr las eventualidades de una absolución y subsiguientemente, cuando se le declara culpable, hacer objeciones a una irregularidad en la forma del juramento. No solamente debe levantarse la cuestión cuando la irregularidad se comete, sino que la forma en que el juramento se tomó, así como la objeción debieron ser incorporadas en un pliego de excepción, a fin de que esta corte pueda ver si es o no suficiente."

El alegado error no ha sido perjudicial al acusado y no habiéndose levantado esta cuestión durante el juicio en la corte inferior, no debe levantarse en apelación.

El segundo señalamiento es que la corte cometió grave error al no aceptar la declaración de culpabilidad hecha por el acusado apelante del delito de homicidio voluntario, y sobre todo, al ordenar la continuación del juicio por el delito de asesinato en segundo grado, luego de aceptada la reducción del delito a homicidio voluntario y todo ello sin que el acusado apelante retirase su alegación de culpable o entrase alegación de clase alguna.

Basta leer la transcripción de evidencia para concluir que el alegado error no tiene fundamento. El acusado manifestó que deseaba declararse culpable de homicidio voluntario, pero alegó en seguida que él le disparó al interfecto porque

éste le había atacado con un puñal. Estas manifestaciones del acusado equivalían a una alegación de inocencia y justificaron la resolución del juez de la corte inferior al ordenar que continuase el juicio. En el caso de *People* v. *Barnard,* (1938). 15 N. E.2d 915, donde el acusado se declaró culpable, pero luego quiso retirar su declaración, la corte, discutiendo este problema, y hablando sobre el poder de la corte para ordenar que una declaración de culpabilidad sea retirada, dijo:

"La regla general es que depende de la sana discreción de la corte el resolver si la alegación del acusado puede ser retirada, cuando teniendo pleno conocimiento de la naturaleza de la acusación que se le hace él se ha declarado culpable. Se han reconocido cuatro excepciones a esta regla: (1) Cuando resulta que una alegación de culpabilidad fué hecha bajo una errónea impresión de los hechos o de la ley; (2) cuando existe una duda en cuanto a la culpabilidad del acusado; (3) cuando el acusado tiene una defensa digna de ser considerada por un jurado; y (4) cuando resulta que los fines de la justicia serán mejor servidos sometiendo el caso a un jurado."

Otros casos a este mismo efecto son: *People* v. *Throop,* (1935), 194 N. E. 553; *Commonwealth* v. *Dr. Paul,* (1936), 184 A. 480. Si aplicamos la regla expuesta a este caso, tenemos que aceptar que la corte inferior actuó correctamente, pues no solamente existía una duda en cuanto a la culpabilidad del acusado, sino que él alegó y creía tener una buena defensa.

Como tercer señalamiento se alega que la corte inferior cometió grave error al permitir al fiscal de distrito en su contrainterrogatorio al testigo Tomás E. Alcalá, introducir prueba de carácter en contra del acusado y también prueba de otros delitos, con el único objeto de impresionar desfavorablemente al jurado en contra del acusado y sin que éste hubiera introducido prueba de buena conducta o se tratase de una excepción de las reconocidas por la ley y la jurisprudencia; y que erró también al denegar la moción de "mistrial".

El incidente que ha motivado este señalamiento, según aparece de la transcripción de la evidencia, fué, en síntesis, como sigue:

El policía insular Antonio Caraballo declaró dos veces, a preguntas del Fiscal, que cuando él arrestó al acusado inmediatamente después del encuentro en que resultó muerto Samuel Santiago Zambrana, el acusado no estaba herido ni tenía rasguño de clase alguna; y al ser repreguntado por la defensa: "¿Notó usted si las manos del acusado estaban lastimadas o heridas, o si tenían algún rasguño?", el testigo contestó categóricamente "No las tenía".

Con el propósito de sentar las bases para establecer la alegada defensa propia, el acusado presentó como testigo a Tomás E. Alcalá, Alcaide Auxiliar de la Cárcel de Distrito de Ponce, quien declaró que el documento que tenía en la mano era la hoja histórico penal perteneciente al acusado Nemesio Arroyo Madera. Preguntado por la defensa: "¿En qué condiciones físicas entró Nemesio Arroyo Madera en ese penal el día 21 de enero de 1944, si hay relación indicativa de eso?", contestó:

"A todo preso que ingresa acusado de un delito de asesinato, homicidio o cualquier otro delito grave, de esa naturaleza, de acuerdo con disposición superior, el médico visitante del penal tiene que examinarlo para determinar si tiene alguna herida. En el legajo perteneciente a Nemesio Arroyo Madera hay una nota que pertenece al 21 de enero de 1944, al margen derecho donde dice: 'Vicisitudes'."

Continuó declarando: "Hay una nota que dice como sigue: Tiene unos raspazos pequeños en la mano derecha y detrás de la oreja derecha. Firmado: Dr. Luis A. Yordán"; que esas notas se ponen el mismo día que el preso viene al penal; que la nota del Dr. Yordán no tiene fecha; que cuando una nota no tiene fecha eso quiere decir que se practicó el mismo día en que el preso ingresó en el penal; que cuando el doctor no viene el mismo día lo examina al día siguiente; que está seguro que el Dr. Yordán examinó al acusado el mismo día.

Terminó el interrogatorio del testigo, anunciando la defensa que no iba a presentar en evidencia la hoja histórico penal del acusado. Fué entonces que el fiscal hizo la siguiente pregunta:

"Fíjese a ver si en relación con otros ingresos de este acusado ahí en la cárcel, si no ha habido ahí alguna nota del examen que le hayan hecho." "Y añadió: 'Dígalo. Por ejemplo, cuando ingresó por primera vez al penal en 29 de mayo de 1933 . . .' "

Intervino el abogado defensor diciendo que deseaba saber cuál era la pertinencia de la pregunta. Contestó el Fiscal que su propósito era "investigar la nota que el récord tiene en cuanto a si ese día que se le imputa la comisión de ese delito tenía ese raspazo en la oreja. Como el testigo acaba de decir que cuando llega un recluso se examina, a ver si las otras veces se ha hecho eso." Se opuso la defensa diciendo que "preferiría que el compañero dijera abiertamente que lo que él quiere que el testigo le diga es si este muchacho ha estado otras veces en la cárcel," a lo que contestó el fiscal: "No es eso." Insistió el fiscal en que él tenía derecho a preguntarle al testigo "si este acusado ha estado otras veces preso por otros delitos y si aparece ese examen." Hizo constar la defensa que "ya estamos a punto de un *mistrial*" y que "el Fiscal no puede hacer observaciones ante el jurado que tiendan a impresionar al jurado," y entonces la Corte instruyó al jurado en la forma siguiente:

"Lo único que va la Corte a decir a los señores del Jurado, es que tengan en cuenta nada más que lo que aparece aquí como prueba. Las manifestaciones de los abogados cuando están dirigiéndose a un testigo, no constituyen evidencia. De manera que ustedes tomarán en cuenta únicamente que lo que se admita como prueba por la Corte. Lo que ocurre con esto es que la mejor evidencia para demostrar que este señor acusado tenía unos rasguños en la oreja era la declaración del Dr. Yordán; el compañero la ha dejado por otra prueba, se ha traído este récord, y el Fiscal ahora hábilmente trata de aprovecharse de eso. Ahora el compañero se opone a que pregunte sobre el resto del documento, parte del cual ya ha sido dado al Jurado."

El abogado defensor tomó excepción y solicitó de la Corte que ordenase un mistrial. La Corte declaró sin lugar la moción. Continuó el fiscal interrogando al testigo con respecto al contenido del récord penal del acusado y el testigo declaró que dicho récord partía del año 1933, cuando aún existía la regla de anotar el resultado del examen médico; que cuando el acusado ingresó en el penal en 1933 el Dr. Yordán lo examinó y certificó que padecía de uncinariasis; que después de mayo de 1933 hay otra nota de ingreso en julio, 1935, pero no tiene nota de examen médico; que en septiembre de 1935 el Dr. Yordán volvió a examinarlo y encontró que padecía de uncinariasis; que después de eso no aparece consignada ninguna otra nota del Dr. Yordán hasta el 1944. Preguntado por el Fiscal si hubo otros ingresos contestó que los hubo en 1935, 1936, 1937, 1938, 1941 y 1942.

Terminado el interrogatorio del Fiscal, preguntó la defensa si los ingresos a que se había referido el testigo habían sido por actos de homicidio. Contestó el testigo que no, que había sido por delitos menos graves, como infracción a la Ley de Bebidas, portar armas, acometimiento y agresión grave y daños maliciosos.

Al renovar la defensa su moción de mistrial, la corte se expresó así:

"La Corte estaba inclinada a resolver que eso era un medio indirecto de introducir evidencia que no era admisible, pero resulta que el Fiscal siguió preguntando sin la objeción de la defensa y el testigo contestando, y claro, el compañero Pérez Marchand le repreguntó y aclaró más, porque el Fiscal no le había preguntado sobre delitos, sino sobre asientos."

La defensa hizo constar que "un fiscal no debe so pretexto de habilidad, llevar al récord para perjudicar la dedefensa de un acusado, cosas que en derecho no se pueden llevar al récord." Replicóle la corte que ésa es la doctrina y la regla "pero es que el acusado cuando le da margen al fiscal, entonces no puede quejarse de lo que le venga". La

corte puso fin al incidente dando al jurado la instrucción siguiente:

"La Corte instruye a los señores del jurado en este momento, que pueden tener en cuenta todo lo que el testigo ha declarado para resolver este caso, pero el hecho de que aparezcan en un récord penal varios asientos en relación con ingresos de una persona por delitos menos graves, no demuestra, en cuanto a este caso, nada sobre la culpabilidad o inocencia del acusado en este caso. O sea, este caso ustedes deben juzgarlo independientemente de cualquier otro caso, porque una persona puede haber estado en la cárcel, en Fiscalía o cumpliendo una sentencia cien veces y ser inocente y una persona puede no haber estado nunca en la cárcel y ser culpable; de manera que los señores del jurado tendrán en cuenta esa instrucción."

La conducta del fiscal fué incorrecta y merecedora de censura; y la corte sentenciadora cometió un grave y perjudicial error al no sostener la objeción de la defensa cuando el fiscal comenzó el interrogatorio del testigo Alcalá, el propósito evidente del cual era el de llevar a conocimiento del jurado el hecho de que el acusado había sido en varias ocasiones anteriores arrestado por o convicto de delitos enteramente distintos y que no estaban en manera alguna relacionados con el delito de asesinato por el cual se le enjuiciaba en este caso. Una de las más elementales reglas de procedimiento criminal es la de que el fiscal no puede ni debe presentar evidencia tendiente a demostrar la mala reputación de un acusado, a menos que el acusado la haya presentado con el propósito de probar su buena reputación. Al presentar tal evidencia, el acusado pone su reputación en controversia, y en ese caso el fiscal puede presentar evidencia en *rebuttal.* 22 C.J.S. sección 676, pág. 1068.

En el caso de autos el acusado presentó la declaración del testigo Alcalá con el único propósito de probar que en el momento en que ingresó en el penal el acusado presentaba unos raspazos en la mano derecha y detrás de la oreja derecha. El abogado defensor hizo constar expresamente que él no presentaba en evidencia la hoja histórico penal del

acusado, que tenía en sus manos el testigo, y el fiscal no solamente no se opuso, sino que fué él mismo quien preguntó al testigo sobre el contenido de la nota de 21 de enero de 1944, firmada por el doctor Yordán.

La presentación en evidencia del contenido de la citada nota no estableció controversia alguna en cuanto al carácter o reputación del acusado. El fiscal no tenía derecho a presentar evidencia tendiente a demostrar que el acusado había sido arrestado y encarcelado o convicto por otros delitos. En 22 C.J.S. sección 682, pág. 1084, encontramos la regla que consideramos aplicable a este caso:

"La regla general, la cual está sujeta a las excepciones expuestas en secciones 683–690, *infra,* es que, en un proceso por un delito determinado, evidencia que demuestre o tienda a demostrar que el acusado ha cometido otro delito enteramente independiente de y no relacionado con aquél por el cual se le está juzgando, aun cuando fuere un delito de la misma clase, es irrelevante e inadmisible, y tal evidencia de un delito independiente es inadmisible por la razón, entre otras, de que no tiende a establecer la comisión por el acusado del delito que se le imputa, que el acusado debe ser juzgado por una sola ofensa en un mismo momento, y que, de acuerdo con la más extensiva regla general, aplicable a todos los casos, civiles o criminales, la evidencia debe limitarse al punto en controversia."

Véase: *State* v. *Spinks,* 125 S.W. 2d 60.

El error cometido al permitir el interrogatorio del fiscal fué a nuestro juicio perjudicial al acusado, pues el efecto inevitable del mismo no pudo ser otro que el de llevar al ánimo del jurado la convicción de que el acusado era un hombre de mala reputación y de antecedentes penales. Las instrucciones de la corte sentenciadora, supra, aun cuando fueron dadas con el propósito de subsanar el error y evitar el perjuicio que éste pudiera haber causado al acusado, son insuficientes e incorrectas. En vez de instruir al jurado que no debería tomar en consideración nada de lo declarado por el testigo Alcalá en contestación a las preguntas del fiscal, la corte les instruyó "que pueden tener en cuenta todo lo

que el testigo ha declarado para resolver este caso''. Estas palabras eran por sí solas suficientes para viciar el resto de la instrucción.

Siendo este error suficiente para justificar la revocación de la sentencia, creemos innecesario discutir los señalamientos referentes a la apreciación y a la suficiencia de la prueba.

*La sentencia recurrida debe ser revocada y el caso devuelto a la corte inferior para la celebración de un nuevo juicio.*

El Juez Asociado Sr. Snyder disintió.